### A90A0791. RANALLI v. THE STATE.
(398 SE2d 420)

SOGNIER, Judge.

Brian Richard Ranalli was convicted of burglary, kidnapping with bodily injury, rape, two counts of aggravated child molestation, and cruelty to children, and sentenced to two life terms plus 80 years. He appeals.

1. Appellant first raises the general grounds, contending that the

State presented only circumstantial evidence against him and did not exclude every other reasonable hypothesis. Construed to support the verdict, the evidence adduced at trial established that the victim, a six year old girl, was abducted from her bedroom at approximately 3:00 a.m. on October 19, 1988 by a man who entered her Cobb County home through an unlocked garage door. Saying that he was taking her to play hide and seek, the perpetrator carried the victim outside the home to a spot underneath a tree in an adjacent yard, where he ordered her to remove her underwear, forced his penis into her mouth, kissed her breasts and vagina, and twice inserted his penis into her vagina. When she screamed in pain, he stuffed her underwear into her mouth. He also slapped her and told her that he had been paid by her father to do these acts. The victim testified that when the attacker released her, she saw him run toward a nearby house. She ran home and woke her parents, who, upon finding their child dirty, bruised, and bleeding profusely from her vagina, called police and an ambulance. Testimony from the victim's parents and the treating physicians established that the victim's perineal wall between her vagina and rectum had been completely torn, that she underwent surgery to repair the damage, that she continues to have vaginal discharges and pain upon urination, and that she contracted venereal diseases that will recur for the rest of her life.

Both after the attack and at trial, the victim, who witnesses testified was alert and rational after the attack, was able to describe her assailant as a white man slightly under six feet in height with brown hair and a mustache. She stated he was wearing a dark shirt with white cursive writing, blue jeans, shoes with laces, and light colored socks with horizontal stripes at the top, and that she found in his pocket and tossed away a white and gold cigarette package that had a picture of a camel on the front. During a search of the area the next day, investigators found a pack of Camel Lite cigarettes, which matched the victim's description, under the tree where the victim had been taken.

It was established that appellant and his girl friend, Connie Young, shared a house with Donna Alexander one block from the victim's home. Young testified that when appellant left for his job with Scapes, a commercial landscaping company, on the morning of October 18, he was dressed in a dark blue sweatshirt with "Scapes" written on the front in white cursive writing, blue jeans, tennis shoes, and white tube socks with colored stripes on the top. She met him at a bar after work, but left after several hours because they argued about their relationship. He telephoned her from another bar at 11:00 p.m. to inform her he was coming home, but she testified he did not return until 2:00 a.m. They again argued, and appellant went to bed but got up a few minutes later and dressed in the same clothes he had been

wearing earlier. Appellant then left the house around 2:15 or 2:30, leaving his wallet behind. Young recalled that he returned at about 3:30 or 3:45 a.m., and that when he got into bed with her his body was cold. In response to her query, appellant stated that he had been out jogging. Young testified that appellant did not go to work the next day, but did report to work on October 20. Testimony from appellant's coworkers established that when he arrived on the 20th, appellant got an advance on his paycheck, borrowed a car, and disappeared. Additional testimony was adduced that appellant was slightly over six feet tall, and that at the time of the attack he had a mustache.

Donna Alexander testified that after hearing news reports of the attack on the victim, she became suspicious because she was aware appellant had been out of the house during the time the incident occurred. When she discovered blood and caked dirt on the clothes appellant had been wearing that night, she alerted Young. In response to an anonymous phone tip from a caller Alexander identified as her mother, Cobb County detectives canvassed the houses on appellant's street on October 20. When they visited appellant's home, Alexander and Young gave them the clothes appellant had been wearing on October 18. A subsequent search of appellant's belongings pursuant to a search warrant yielded several adult magazines and an open pack of Camel Lite cigarettes, which Young testified was the brand appellant smoked. Appellant was arrested at his brother's home in Detroit five days later.

At trial, FBI Agent William Sievers, who arrested and interviewed appellant, testified that appellant admitted leaving his house around 2:30 a.m. on October 19, and said he had gone for a walk to the nearby home of an acquaintance. Appellant informed Sievers that on several occasions in the past he had exposed himself to young girls, that he had a "bad person" inside him who had recently reappeared, and that he did not know whether he had perpetrated the attack on the victim. Evidence of appellant's prior guilty plea to two charges of indecent exposure to young girls was admitted into evidence, as was evidence that appellant had told the arresting officer at the time that the "bad part" of him was that "young girls turned him on."

A forensic serologist testified that blood found on appellant's clothing was consistent with that of the victim, and a fluid sample taken from the tissue surrounding the victim's vagina tested positive for sperm. A forensic microanalyst testified that fibers found on appellant's clothing were consistent with those taken from the victim's clothing, dirt taken from the clothing of both was consistent with a soil sample taken from underneath the tree where the attack occurred, and a pubic hair found on the victim could have come from appellant.

Since the victim did not identify appellant at trial, we must consider whether the circumstantial evidence supported the jury's verdict. "To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused. . . . This does not mean that the state must exclude every possible hypothesis showing innocence, but any reasonable hypothesis showing innocence. (T)he question of whether every other reasonable hypothesis has been excluded is generally a question for the jury." (Citations and punctuation omitted.) *Bird v. State*, 178 Ga. App. 687, 688 (344 SE2d 468) (1986). Contrary to appellant's assertions, the State was not required "to prove that it was impossible for the offense to have been committed by [any of the other persons the police once considered suspects], or that it might not, by bare possibility, have been done by another. [Cit.]" *Schmalz v. State*, 177 Ga. App. 634, 635-636 (341 SE2d 11) (1986). Here, as in *Schmalz*, "the evidence points inexorably toward [appellant] and him only." Id. at 636. The jury considered and weighed the evidence, as is their duty, and their conclusion was supported by evidence sufficient to convince a rational trier of fact of appellant's guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. In two enumerations appellant maintains his convictions for rape and aggravated child molestation should be vacated because they merged with other charges as a matter of fact.

(a) We disagree with appellant's contention that the rape count merged into the conviction for kidnapping with bodily injury. The indictment alleged the bodily injury occurring during the kidnapping was "a laceration to the vaginal and perineal area," not the rape. "The offense of rape occurs when there is 'any penetration of the female sex organ by the male sex organ,' forcibly and against the female's will [cit.]. . . . [The law does not require] that the victim's testimony must be corroborated or supported by additional evidence to support a finding of rape. [Cit.]" *Neal v. State*, 152 Ga. App. 395, 396-397 (1) (263 SE2d 185) (1979). Accordingly, proof of vaginal injury or trauma is not required. Id. at 397 (1). The rape count was established by the victim's testimony and proof of the presence of seminal fluid, *Searcy v. State*, 158 Ga. App. 328, 329 (280 SE2d 161) (1981), and thus the rape charge was a separate crime from that evidenced by the victim's vaginal lacerations.

(b) With regard to appellant's fifth enumeration, we note that the question is not whether the rape and aggravated child molestation counts merged into the charge of cruelty to children as appellant contends, but whether the lesser offense of cruelty to children merged into the greater offenses. See OCGA § 16-1-6; see also *Love v. State*, 190 Ga. App. 264, 265 (3) (378 SE2d 893) (1989). The two acts of oral

sodomy were alleged in the indictment as the basis for the aggravated child molestation counts, see OCGA § 16-6-4 (c), and the indictment also charged appellant with committing the offense of cruelty to children by causing "cruel and excessive physical and mental pain by raping and sodomizing" the victim. See OCGA § 16-5-70 (b). The evidence established that during the acts of rape and sodomy, the victim was threatened and terrorized, that she screamed in pain, and that she continues to experience pain and discomfort and will suffer from the venereal diseases she contracted from appellant forever. These facts were not needed to prove the elements of rape and aggravated child molestation, and accordingly there was no merger. See *Love*, supra.

3. Appellant next contends the prosecutor's statement during closing argument that "[t]here isn't any alibi where [appellant] was" constituted an impermissible comment on his failure to testify and was unduly prejudicial. We find no merit in these enumerations. We do not consider appellant's contradictory, self-serving statements to Young and Agent Sievers regarding his whereabouts to constitute an alibi, and having reviewed the quoted statement in context, we disagree with his characterization of the argument as having been a comment on his failure to take the witness stand.

4. Appellant also enumerates as error the court's refusal to grant his motion for mistrial made on the ground that a statement made by Agent Sievers was unresponsive and improperly placed his character into evidence. The record reveals that in response to the prosecutor's question whether the agent had held out any hope of benefit to appellant in exchange for his statement, Sievers replied that "I advised him at that point, that there was a warrant on him out of Florida for probation violation." The trial judge denied appellant's ensuing mistrial motion, and no curative instructions were requested or given.

We agree with appellant that this statement was improper, and acknowledge that our courts have taken a stern view of such conduct by law enforcement officers. See *Boyd v. State*, 146 Ga. App. 359-360 (2) (246 SE2d 396) (1978). Stating that *Boyd* did not establish a per se rule that such statements are inherently prejudicial and compel reversal, the Supreme Court has held that "the decision of whether such statements are so prejudicial as to warrant a mistrial [is left] to the discretion of the trial court. [Cits.]" *Sabel v. State*, 250 Ga. 640, 644 (5) (300 SE2d 663) (1983) (overruled in part on other grounds, *Massey v. Meadows*, 253 Ga. 389, 390 (321 SE2d 703) (1984)). On appeal, our inquiry must focus on whether the trial court abused that discretion, which includes consideration of the nature of the statement, the other evidence introduced during the trial, and the action taken by the court and counsel concerning the impropriety. Id.

Here, the prejudicial impact of Sievers' statement was lessened

by properly admitted evidence of appellant's prior guilty plea on charges of indecent exposure to young girls and by the admission of a statement by appellant to Sievers that he considered talking to Cobb County authorities about the victim's assault but did not do so because he feared the outstanding Florida warrant for his probation violation would be discovered. See *Lewis v. State*, 179 Ga. App. 118, 119 (2) (345 SE2d 663) (1986). In addition, the trial court gave appellant an opportunity to request curative instructions, but he did not do so. See *Wright v. State*, 253 Ga. 1, 4 (3) (316 SE2d 445) (1984). Moreover, unlike the circumstance in *Boyd*, we do not view the agent's comment as an attempt to interject evidence of other crimes to bolster a factually weak case. See *Tutman v. State*, 164 Ga. App. 400 (296 SE2d 412) (1982). Accordingly, we do not find the challenged remark so flagrantly prejudicial as to violate appellant's right to a fair trial. See id.

5. We find no merit in appellant's contention that he received ineffective assistance of counsel during closing argument, for we find the challenged comments, taken in the context of the entire closing argument, to have been part of counsel's trial strategy. "The mere fact that appellate counsel would have tried the case differently does not show ineffectiveness. [Cit.] Errors of judgment and trial tactical errors do not constitute ineffectiveness. [Cit.]" *Johnson v. State*, 179 Ga. App. 21, 25 (345 SE2d 123) (1986).

*Judgment affirmed. Carley, C. J., and McMurray, P. J., concur.*

DECIDED OCTOBER 23, 1990.

*Daniel L. Henderson*, for appellant.
*Thomas J. Charron, District Attorney*, for appellee.