## A05A0253. BROWN v. THE STATE.
(620 SE2d 394)

MIKELL, Judge.

A DeKalb County grand jury returned an indictment against Troy Johnnie Brown, charging him with 14 counts of child molestation and 11 counts of aggravated child molestation.[1] After a jury trial, Brown was convicted of each charge. On appeal, Brown argues that his motion for new trial should have been granted because of juror misconduct, that the trial court erroneously admitted similar transaction evidence, that his trial counsel was ineffective, and that the trial court should have granted his motion to recuse. We affirm.

"On appeal from a criminal conviction, the evidence must be construed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence."[2] So construed, the evidence shows that Brown was the pastor of the Greater Anointing Tabernacle Church in January 1998, when 11-year-old B. H., the victim herein, and his family became involved in the church. In June 2001, B. H.'s family relocated to Louisiana. Five months later, they moved back to Georgia after Brown asked them to return to the church. Brown paid for the family's moving expenses and arranged for them to move into an apartment.

B. H.'s mother testified that during the first quarter of 2002, she noticed that B. H. was in possession of large amounts of money, which he said that Brown gave to him. B. H.'s parents threatened to punish him if he continued to take money from Brown. After learning that B. H. ignored her threat, his parents punished him for one week. On the last day of his punishment, Friday, March 22, 2002, Brown picked up B. H. to take him to buy a suit for Easter Sunday. B. H.'s mother explained that different members of the church sponsored each of her children, and Brown was B. H.'s sponsor. Brown did not bring B. H. home until after 11:30 that night. On the next day, B. H. went to the church in the morning for choir rehearsal and church cleanup and did not come home until after 5:00 p.m. B. H.'s mother asked him if Brown had said or done something inappropriate to him. B. H. dropped his head and began to cry. B. H.'s parents notified the police that evening.

B. H. testified that prior to his family's move to Louisiana, Brown asked him if he ever looked at men and told B. H. that it was normal to do so and to come to him if he needed to talk to someone about it.

---

[1] Counts 1 through 11 were alleged to have occurred between January 1 and March 21, 2002, excluding March 6, 2002. Counts 12 through 19 were alleged to have occurred on March 6, 2002, and the remaining counts, 20 through 25, were alleged to have occurred on March 22, 2002.

[2] (Punctuation and footnote omitted.) *Dean v. State*, 252 Ga. App. 204 (555 SE2d 868) (2001).

B. H. further testified that Brown regularly gave him money; that he spent the night at Brown's house; that three boys lived with Brown at the time; that on one night, Brown masturbated while asking him about looking at men, told him to masturbate, and he complied; that Brown told him that he and his friends used to "run trains" on girls and videotape it; that Brown preached against homosexuality after the incident; that the next incident occurred on a Saturday, which he recalls because they had planned to go to the mall that morning to return some clothes that Brown had purchased for him; that instead of going to the mall they went to Brown's home where Brown played x-rated videos, masturbated, told B. H. to masturbate and to penetrate Brown's anus, and used his hand to masturbate B. H.

B. H. further testified that on March 6, he was assaulted at a MARTA bus station and called Brown for help since his parents did not have a car or a phone. Brown picked B. H. up and, before taking B. H. to his house, called to instruct the other boys to leave the house. When they arrived at Brown's house, Brown played the pornographic movies again, laid on top of B. H., performed oral sex on B. H. and penetrated his anus, and asked B. H. to perform oral sex on him. Afterward, Brown gave him $20 and had a church member take him to the church. B. H. testified that these same sexual acts occurred on another evening when Brown sent everyone else out of the house to look for his dogs.

B. H. recalled that on Friday, March 22, Brown took him shopping at a clothing store on Candler Road. Afterward, they went to Brown's house where the same sexual acts discussed above occurred again. On this particular occasion, however, B. H. told Brown that the penetration of his anus was painful, but Brown continued to penetrate him. Brown gave him $20 after they finished, and they went to the church to attend services. On the following day, B. H. went to the church in the morning and when he returned home, his mother began to ask him about Brown because another church member had told her that he did not like the way that Brown looked at B. H. B. H. told his mother what had happened between him and Brown. On the next day, he went to the hospital and on the following day, gave a videotaped statement at the Georgia Center for Children. Additional facts will be provided as necessary to address Brown's enumerated errors.

1. In his first error, Brown argues that the trial court erred in failing to grant his motion for new trial after determining that the jury had engaged in misconduct during their deliberations by using a cell phone to access information relevant to one of the incidents alleged in the case.

During a post-trial contempt hearing against the jury foreman on June 7, 2002,[3] the trial court learned that one of the jurors used his cellular phone to access MapQuest on the internet to attempt to calculate the distance between the store that Brown took B. H. to on Friday, March 22, and Brown's home. According to the foreman, the information obtained from MapQuest differed from the evidence presented by one mile. The foreman testified that the information from MapQuest did not affect his deliberations and that he did not think it affected the other jurors.

The trial court held additional hearings on June 21, 2002, ordering the remaining jurors to testify about the MapQuest information. The juror who actually performed the MapQuest search testified that the jury had reached a guilty verdict on all twenty-five counts but when the foreman asked them if they were comfortable with their verdict, one juror indicated that she was not comfortable with the verdict on the last incident, which led the jury to resume deliberations on Counts 20 through 25; that he performed the search because that juror questioned the distances traveled by Brown on March 22, 2002; that the information from the internet was essentially the same as that presented at trial as to the distance between the store and Brown's house; that the juror did not appear to be influenced by the information from MapQuest but was influenced by the evidence as to the distance between Brown's house and the church, which was presented at trial; and that he did not think the MapQuest information helped her come to any decision in the case because they spent another three to four hours deliberating and the MapQuest information did not come up again.

Ten jurors appeared at the June 21 hearing, and the last juror appeared at a second hearing on July 7, 2002. Nine of the jurors testified that they were not influenced by the MapQuest information. Two of the jurors did not recall being told the MapQuest information.

"To upset a jury verdict, the misconduct must have been so prejudicial that the verdict is deemed inherently lacking in due process."[4] "There must be a reasonable probability that the misconduct contributed to the conviction."[5] In *Butler v. State*,[6] some of the jurors visited a crime scene to determine the distance between several objects at the scene. Two of the jurors testified that the

---

[3] The foreman was held in contempt because he offered to sell Brown information that he said would be helpful in securing a new trial.

[4] (Citation and punctuation omitted.) *Fulcher v. State*, 259 Ga. App. 648, 651 (4) (578 SE2d 264) (2003).

[5] (Footnote omitted.) *Merritt v. State*, 248 Ga. App. 709, 711 (1) (548 SE2d 427) (2001).

[6] 270 Ga. 441 (511 SE2d 180) (1999).

information had not affected their verdict and one raised the possibility that the information could have affected her verdict.[7] Our Supreme Court "conclude[d] that the alleged irregular conduct was not so prejudicial so as to have rendered the trial fundamentally unfair and to have contributed to the conviction."[8] In this case, the trial court painstakingly questioned every juror to determine if the MapQuest information influenced their verdict. Of the jurors who actually recalled receiving the information, all of them testified that they were unaffected by the information. Furthermore, there was evidence that the information received from MapQuest was cumulative of that admitted at trial. Therefore, we do not find that the trial court's denial of Brown's motion for new trial on this ground was erroneous.

2. Next, Brown argues that the trial court erred by admitting the similar transaction evidence offered by the state. "A trial court's determination that similar transaction evidence is admissible will not be disturbed absent an abuse of discretion."[9]

> The exception to the general rule that evidence of other crimes is not admissible has been most liberally extended in the area of sexual offenses: In crimes involving sexual offenses, evidence of similar previous transactions is admissible to show the lustful disposition of the defendant and to corroborate the victim's testimony. There need only be evidence that the defendant was the perpetrator of both crimes and sufficient similarity or connection between the independent crime and the offenses charged.[10]

On the issue of similarity, "this court has held that the sexual molestation of young children, regardless of sex or type of act, is sufficient similarity to make the evidence admissible."[11]

Brown argues that the independent offenses testified to by four of the state's similar transaction witnesses were offered for an improper purpose and were not sufficiently similar to warrant their admission into evidence. At the pre-trial hearing on that evidence, the state proffered that it was introducing the evidence to show motive, plan, scheme, bent of mind, and lustful disposition, all of

---

[7] Id. at 445 (2).

[8] (Footnote omitted.) Id.

[9] *Brooks v. State*, 230 Ga. App. 846 (1) (498 SE2d 139) (1998).

[10] (Citation omitted.) *Leaptrot v. State*, 272 Ga. App. 587, 596 (3) (612 SE2d 887) (2005).

[11] (Citations and punctuation omitted.) *Jackson v. State*, 198 Ga. App. 447, 448 (1) (402 SE2d 279) (1991).

which are appropriate purposes for the introduction of such evidence.[12] The state argued that Brown set himself up as a father figure or mentor to these boys, that the sexual acts always involved fondling of the penis and/or oral and anal sodomy, and that he either molested the boys in his home or in a hotel. We will analyze the admissibility of the evidence as it relates to the testimony of each similar transaction witness about whom Brown complains on appeal.

(a) O. J.

The state proffered that Brown invited this victim to spend a night at his home when the child was 16 years old. The child was affiliated with Brown's church. During that night, Brown forcibly anally penetrated the victim. The next day, the victim went to church with Brown, who preached against homosexuality. We find no abuse of discretion in the trial court's decision to admit O. J.'s testimony.

Brown argues that the medical testimony documenting O. J.'s injuries and the photograph of O. J.'s anus should not have been admitted. Yet, at trial, this evidence was introduced without objection. "One must object to evidence when it is actually offered, and the failure to object waives any objection which might have been raised."[13] Brown also argues that the prejudicial effect, particularly of the photograph, outweighed the probative value of the evidence. As to the picture, Brown has waived any argument. Moreover, "a trial court's finding that 'other transactions' evidence is relevant necessarily constitutes an implicit finding that the probative value of that evidence outweighs its prejudicial impact."[14]

(b) Willie Cornelius.

The state proffered that Cornelius was 29 years old when he was assaulted by Brown; that Brown invited Cornelius to a hotel room after church one evening and told him to bring some alcohol, knowing that Cornelius was an alcoholic; that both men were drinking; that Brown played pornographic videos, then put his hands into Cornelius's pants and touched his penis, whereupon Cornelius fought Brown off. Brown argues that this evidence was not admissible because of the difference in the age of the victims. However, where the incidents are similar, "the difference in the victims' ages does not make the similar transaction inadmissible."[15] Moreover, "a particular sexual act performed upon an adult rather than a child may nevertheless be relevant to show similarity and that the defendant

---

[12] See *Schneider v. State*, 267 Ga. App. 508, 510 (2) (603 SE2d 663) (2004).

[13] (Citation omitted.) *Overton v. State*, 270 Ga. App. 285, 289 (3) (606 SE2d 306) (2004).

[14] (Citation and punctuation omitted.) *Owens v. State*, 271 Ga. App. 365, 369 (4) (609 SE2d 670) (2005).

[15] *Kingsley v. State*, 268 Ga. App. 729, 730 (1) (603 SE2d 78) (2004).

had a lustful disposition toward the sexual activity with which he is charged or his bent of mind to engage in that activity."[16]

(c) Gerald Sanders.

With regard to Sanders, the state proffered that he was 22 years old at the time of the incident; that Brown invited him into his home, took him to a bedroom, left the room and returned naked; and that Brown proceeded to try to have sex with Sanders. Because the court determined that the state's proffer contained similarities as well as dissimilarities, it reserved its ruling until Sanders could be made available for questioning. At trial, out of the jury's presence, Sanders testified that he was not a member of Brown's church but that Brown had invited him over to see a video of his church choir, took him upstairs to a bedroom, and attempted to assault him. The trial court permitted Sanders to testify at trial. We find no error for the same reasons set forth above.

(d) I. S. W.

Brown argues that I. S. W. testified to offenses that were outside the scope of the state's proffer. The state proffered that this victim's father was an associate minister in Brown's church; that the victim's father asked Brown if the child could live with him after the child was charged with a criminal offense; that the victim's father gave Brown permission to "whip" him; that the victim turned 16 while living with Brown, which is when the molestation began; and that Brown threatened to have the victim's probation revoked and then engaged in sexual activity with him. The state argued that once again, Brown exerted his influence as a father figure and mentor to manipulate the victim. The trial court did not abuse its discretion by admitting this similar transaction evidence.

Brown argues that at trial, I. S. W.'s testimony exceeded the scope of the state's proffer. At trial, the victim testified that he stole money from Brown, who beat him with an extension cord and punched him and on that same day orally and anally sodomized him. The state introduced pictures of the victim's injuries from the beating. I. S. W. also testified that Brown orally and anally sodomized him on a cruise ship. Brown did not object and the failure to do so is fatal to his argument on appeal.[17]

---

[16] (Citation and punctuation omitted.) *Beck v. State*, 263 Ga. App. 256, 259 (2) (587 SE2d 316) (2003). See also *Leaptrot*, supra at 598-599 (3) (c).

[17] *Overton*, supra. We note that, as discussed more fully in Division 5, even if Brown's trial counsel had successfully excluded this evidence, in light of the overwhelming evidence of Brown's guilt, there is a reasonable probability that the outcome would not have changed.

3. Next, Brown argues that the trial court should not have admitted the similar transaction evidence because the state failed to prove that it gave Brown adequate notice of its intent to use the evidence. We disagree.

The record shows that Brown was indicted on Thursday, May 2, 2002, and filed his demand for speedy trial on that same day, during the last week of the March term of court. The May term of court would commence the following Monday,[18] thus, pursuant to OCGA § 17-7-170 (b), the state had until the end of June to try Brown or he would be acquitted as a matter of law. Pre-trial motions were heard on May 7, 9, and 10. The state filed its notice of intent to present evidence of similar transactions on May 7, which listed O. J., Cornelius, and I. S. W. as witnesses. On that same day, Brown waived formal arraignment and entered a plea. The parties were given until May 10 to file all motions. The trial court asked defense counsel to notify the court if he needed additional time after receiving the state's motions. The state filed a second notice of intent to present evidence of similar transactions on May 10, which identified Sanders as a witness. The trial commenced on May 13, 2002.

At the hearing on the motion for new trial, defense counsel testified that they made the decision to file a demand for speedy trial because they thought that the state would not be able to gather the evidence necessary to try the case within the time constraints created by the speedy trial demand. Defense counsel also testified that additional time to investigate the similar transaction witnesses would have been helpful.

"Although Rule 31.1 requires the notice [of intent to present similar transactions] to be filed at least 10 days before the trial,[19] it authorizes the exercise of a trial court's discretion by providing that the trial court may shorten or lengthen the time for compliance with the rule."[20] Here, the state filed its notices of intent to present similar transaction evidence three and six days before trial. In light of the demands placed on the court due to Brown's speedy trial demand, we find that the trial court did not abuse its discretion by shortening the time for compliance with USCR 31.1.

4. Brown argues that the trial court erred when it excluded impeachment evidence related to a similar transaction witness on the

---

[18] OCGA § 15-6-3 (37).

[19] Uniform Superior Court Rule (USCR) 31.1 provides, in pertinent part, that "[n]otices of the state's intention to present evidence of similar transactions or occurrences . . . shall be given and filed at least ten (10) days before trial unless the time is shortened or lengthened by the judge."

[20] *Rudisail v. State*, 265 Ga. App. 293 (1) (593 SE2d 747) (2004), citing *Thaxton v. State*, 260 Ga. 141, 144 (6) (390 SE2d 841) (1990) (five days notice was sufficient).

grounds that the information was prohibited under the rape shield statute. As discussed below, the trial court's exclusion of this evidence was erroneous, but the error does not warrant the reversal of Brown's convictions.

The record shows that the defense proffered evidence that O. J. accused Brown of sexually assaulting him to cover up his homosexual relationship with another young male, and the state filed a motion in limine to exclude the evidence based upon the rape shield statute. The rape shield statute, codified at OCGA § 24-2-3, provides, in relevant part: "[i]n any prosecution for rape, evidence relating to the past sexual behavior of the complaining witness shall not be admissible, either as direct evidence or on cross-examination of the complaining witness or other witnesses."[21] At the time of Brown's trial, the rape shield statute applied to child molestation cases.[22] In *Abdulkadir v. State*,[23] however, our Supreme Court disapproved *Flowers* and *McGarity*, holding that "the rape shield statute, by its plain terms, applies only to prosecutions for rape."[24] Therefore, under *Abdulkadir*,[25] the evidence of O. J.'s alleged homosexual relationship should not have been excluded based upon the rape shield statute. But "[w]hen error is found, the inquiry becomes whether harm occurred. And the test for determining harmless error is whether it is highly probable that the error did not contribute to the judgment."[26]

O. J. testified that during the summer of 1996, he began to attend Brown's church in Buffalo, New York. According to O. J., in September of that year, Brown anally raped him. O. J. recalled explicit details about the rape and explained that at one point he recanted his story because he did not want to proceed with the case. The state presented medical testimony from the doctor who examined O. J. in New York that when she examined O. J. two weeks after the alleged attack, there was a visible tear in his rectal area. The doctor opined that the fact that she could see evidence of the injury two weeks after the

---

[21] OCGA § 24-2-3 (a).

[22] *Flowers v. State*, 255 Ga. App. 660, 662 (2) (566 SE2d 339) (2002), citing *McGarity v. State*, 224 Ga. App. 302, 303 (1) (480 SE2d 319) (1997). We note, too, that OCGA § 24-2-3 has recently been amended by Ga. L. 2005, p. 20, § 13.1 to apply expressly to prosecutions for aggravated child molestation.

[23] 279 Ga. 122 (610 SE2d 50) (2005).

[24] Id. at 123 (2). The Court also stated that "[a]ny expansion of the rape shield statute's applicability must come from the legislature, as it alone is entrusted with the authority to amend existing laws." (Footnote omitted.) Id. at 124 (2). On April 5, 2005, the legislature approved the Criminal Justice Act of 2005 (the "Act"), which, among other things, made the rape shield statute applicable to aggravated child molestation cases. However, Section 17 of the Act provides that it is only applicable to trials commencing on or after July 1, 2005.

[25] Supra.

[26] (Punctuation and footnote omitted.) *Salgado v. State*, 268 Ga. App. 18, 22 (2) (601 SE2d 417) (2004).

alleged assault meant that some degree of force was used during the assault. Further, she testified that it was rare to find evidence of physical trauma in these types of cases. A photograph of O. J.'s rectal tear was admitted into evidence.

Defense counsel argues that the photograph of O. J.'s rectal tear and the medical testimony regarding same prejudiced Brown's case. Therefore, Brown should have been permitted to introduce evidence of O. J.'s past sexual behavior to argue "bias, credibility, and obviously any motivation he may have to fabricate a story in regards to the defendant." However, the state introduced evidence that after O. J. told his mother about the incident, the police were contacted. The state introduced as exhibits Brown's indictment for endangering the welfare of a child and his guilty plea to that charge.[27] Therefore, even if Brown had been given the opportunity to cross-examine O. J. about his past sexual behavior, it is unlikely that the jury would have adjudged this evidence credible, completely disregarding Brown's guilty plea and the other evidence that this similar transaction did occur. Therefore, we find it highly probable that this error did not contribute to the jury's verdict.

5. In several enumerations of error, Brown argues that his trial counsel was ineffective. We disagree.

> In order to prevail on a claim of ineffective assistance of counsel, the defendant must show (1) that counsel's perfor-mance was deficient and (2) that the defendant was preju-diced by the deficient performance — i.e., that there was a reasonable probability that the trial would have turned out differently but for counsel's deficient performance. A finding by the trial court that the defendant did not receive ineffec-tive assistance of counsel will be affirmed unless clearly erroneous.[28]

"A court considering a claim of ineffectiveness of counsel is not required to address the performance portion of the inquiry before the prejudice component or even to address both components if the defendant has made an insufficient showing on one."[29]

(a) Brown argues that his trial counsel was ineffective because he failed to introduce exculpatory evidence, in the form of a receipt from

---

[27] For the purposes of the record only, the trial court admitted Brown's indictment for third degree sodomy and the certificate of conviction that listed the sodomy charge.

[28] (Citation and punctuation omitted.) *Abney v. State*, 240 Ga. App. 280, 282-283 (3) (523 SE2d 362) (1999).

[29] (Citation and punctuation omitted.) *Green v. State*, 240 Ga. App. 650, 652-653 (3) (523 SE2d 632) (1999).

J. C. Penney, which he introduced at the hearing on the motion for new trial. Brown contends that the receipt from J. C. Penney, dated Thursday, February 21, 2002, showed that he purchased baby clothes, not clothes for the victim. Brown maintains that this evidence would have shown that B. H.'s testimony, that Brown purchased clothes for him at J. C. Penney on a Saturday in February and molested him the following Saturday, was fabricated.

First, we do not agree with Brown's characterization of this evidence as "exculpatory." Brown's use of a credit card to purchase baby items on one day does not mean that he did not purchase items for B. H. using another means of currency on a different day. Though Brown's trial counsel acknowledged that Brown directed him to get his bank statements from someone at the church and that the statements would show that he had not purchased clothes for B. H., trial counsel also testified that he contacted the church member but never received information from her that he thought would be helpful to the defendant. Brown has not shown that the receipt introduced at the hearing on the motion for new trial fell within the realm of exculpatory evidence or that such evidence would have changed the outcome of his case. Thus, we cannot find that trial counsel's failure to introduce it amounted to ineffective assistance of counsel.[30]

Brown also argues that trial counsel did not introduce the testimony of certain witnesses regarding the two weekends in question. However, Brown does not identify these witnesses or make a proffer as to their testimony. Therefore, this claim of ineffectiveness fails as well.

(b) Without citing to the record or to authority to support his argument, Brown generally alleges that his trial counsel failed to object to similar transaction evidence. The record, however, reflects the contrary. Trial counsel opposed the state's notices to present the evidence, argued against the state's proffers, and repeatedly objected on various grounds throughout the trial. Given this Court's determination in Division 2 that the similar transaction evidence was properly admitted, even if Brown's trial counsel had not objected to the evidence, Brown cannot show that the failure to do so prejudiced his defense.[31]

(c) Brown contends that three of the similar transaction witnesses testified about acts that exceeded the scope of the state's proffered evidence, and his counsel's failure to object thereto prejudiced the outcome of his case. Assuming, arguendo, that trial counsel

---

[30] See *Bishop v. State*, 266 Ga. App. 129, 134-135 (4) (596 SE2d 674) (2004) (defendant's failure to set forth allegedly exculpatory evidence not presented by trial counsel fatal to claim for ineffective assistance of counsel).

[31] See *Harris v. State*, 268 Ga. 412, 413 (490 SE2d 96) (1997).

should have objected to the evidence, in light of the overwhelming evidence of Brown's guilt, he has not shown that but for trial counsel's failure to object to the similar transaction evidence, the outcome of his trial would have been different.[32]

(d) Lastly, Brown contends that his trial counsel failed to object to the introduction of the similar transaction evidence on the grounds that the state did not provide adequate notice of its intent to present the evidence. In light of our decision in Division 3 that the trial court did not abuse its discretion by shortening the time within which the state was required to comply with USCR 31.1, trial counsel's failure to object on this ground does not render him ineffective.

6. In his last enumeration of error, Brown argues that the trial court erred by denying his motion to recuse. We review the denial of a motion to recuse under an abuse of discretion standard.[33] The facts pertinent to this error follow.

Upon the request of the defendant, the trial court entered an order on June 21, 2002, directing the DeKalb County sheriff to detain Brown in the DeKalb County jail during the pendency of his appeal. The order also stated that because Brown had made two suicide attempts due to the charges in the case, he should not be given medication without the prior approval of the court. Further, if medication was approved by the court, it should be administered under conditions that would not permit the defendant to hoard the medication. At some point thereafter, Brown retained new counsel, Dwight Thomas and Maurice Bennett. On March 31, 2003, Brown's newly retained counsel filed a motion to rescind the order discussed above. The trial court granted the motion on April 2, 2003.

On August 12, 2003, the court entered an order to permit Thomas to withdraw as attorney of record. Bennett filed a motion to withdraw on that same day, which it appears the trial court granted, as an order appointing a public defender to represent Brown in his motion for new trial and appeal was entered on August 21, 2003. On August 27, 2003, Brown, pro se, filed a motion to recuse and request for evidentiary hearing. Brown attached an amended copy of the June 21, 2002, order denying him medication without prior court approval. The amendment contained therein authorized "medical personnel" to approve medication for Brown. Brown maintains that this amended order was never filed and resulted from the trial judge's ex parte communication with jail personnel. Further, he averred that he learned of this ex parte communication on August 20 or August 21, 2003, during which time he maintains that he was unrepresented by

---

[32] *Bailey v. State*, 259 Ga. App. 293, 298 (6) (576 SE2d 668) (2003).
[33] *Vaughn v. State*, 247 Ga. App. 368, 370 (2) (543 SE2d 429) (2000).

counsel. The trial court entered an order dismissing Brown's pro se motion because he was represented by counsel at the time the motion was filed.

On September 26, 2003, Brown's counsel filed a motion to recuse, adopting Brown's pro se motion. Brown's counsel averred that Brown learned of this information on or about August 21, 2003. The trial court denied the motion to recuse on April 21, 2004, on the grounds that the motion was untimely, the affidavit in support of the motion was legally insufficient, and the grounds urged for recusal were legally insufficient.

> Motions to recuse must be timely and made as soon as the facts demonstrating the basis for disqualification become known. Uniform Superior Court Rule 25.1 requires that such motions must be made "not later than five (5) days after the affiant first learned of the alleged grounds for disqualification," unless good cause is shown. . . . Absent the filing of a timely recusal motion accompanied by a legally sufficient affidavit, such motion is subject to denial on its face.[34]

Pretermitting whether the motion was timely, once a trial judge is presented with a motion for recusal, "it is the duty of the trial judge to determine whether, assuming the truth of any of the facts alleged, a reasonable person might conclude that the judge harbors a bias, stemming from an extra-judicial source, which is of such a nature and intensity that it would impede the exercise of impartial judgment."[35] Also, "it is as much the duty of a judge not to grant the motion to recuse when the motion is legally insufficient as it is to recuse when the motion is meritorious; nor does the simple filing of an affidavit automatically disqualify a judge."[36]

In the instant case, even assuming that the allegations averred in Brown and his appellate counsel's affidavits were true, they did not support a charge of bias sufficient to warrant recusal. As stated therein, the trial court entered the first order prohibiting Brown from receiving medication because of his suicide attempts. The fact that the trial judge amended the order to permit medical personnel, in addition to the court, to authorize medication for Brown does not indicate a bias against him, and Brown has not shown that by virtue of that amendment, the judge's exercise of impartial judgment would be impeded.

---

[34] (Footnotes omitted.) *Johnson v. State*, 250 Ga. App. 245, 246 (1) (550 SE2d 113) (2001).

[35] (Citation omitted.) *Wellons v. State*, 266 Ga. 77, 88 (18) (463 SE2d 868) (1995).

[36] (Citation omitted.) *State v. Fleming*, 245 Ga. 700, 702 (267 SE2d 207) (1980).

Additionally, we note that USCR 4.1 provides that "[e]xcept as authorized by law or by rule, judges shall neither initiate nor consider ex parte communications by interested parties or their attorneys concerning a pending or impending proceeding." Brown cites no authority for his proposition that the trial judge's communications with jail personnel constitutes such an ex parte communication.

Brown also argues that the motion for recusal should have been granted based upon the trial court's May 2, 2003, order to restrict Brown's telephone calls and visitation to his counsel only because the trial court failed to produce evidence to support its order. Brown's motion to recuse on this issue was untimely.[37] Accordingly, the trial court's denial of Brown's motion to recuse was appropriate.

*Judgment affirmed. Andrews, P. J., concurs. Phipps, J., concurs in judgment only.*

DECIDED JULY 28, 2005 —
RECONSIDERATION DENIED AUGUST 31, 2005 — ▮▮▮▮▮▮

*Lohmeier & Lohmeier, Gregory J. Lohmeier, Franklin & Hubbard, Rodney A. Williams*, for appellant.

*Jeffrey H. Brickman, District Attorney, Robert M. Coker, Assistant District Attorney*, for appellee.

