A11A0045. COLLINS v. THE STATE.
(714 SE2d 249)

MILLER, Presiding Judge.

Following a jury trial, Eugene Collins was convicted of six counts of child molestation (OCGA § 16-6-4 (a)) and three counts of aggravated child molestation (OCGA § 16-6-4 (c)). On appeal from the denial of his motion for new trial, Collins contends that the trial court (i) erred in admitting testimony that violated the provisions of the rape shield statute, OCGA § 24-2-3; (ii) erred in admitting similar transaction evidence of his prior 1989 conviction for aggravated child molestation; (iii) erred in denying his motion for a mistrial; and (iv) erred in allowing the State to ask improper voir dire questions. He also contends that his trial counsel rendered ineffective assistance in failing to object to the similar transaction evidence on the basis of its lack of similarity and its prejudicial impact. We discern no error and affirm.

Viewed in the light most favorable to the verdict, *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), the trial evidence shows that Collins was the stepfather of the female victim, J. H. Collins married J. H.'s mother in March 2002 and lived in the family residence.

J. H. testified that at some point, when she was between 12 and 13 years old, Collins began molesting her. J. H. stated that one morning after her mother went to work, Collins entered her bedroom and started fondling her breasts and vagina. Collins then pulled down J. H.'s pants, unzipped his own pants, and inserted his penis into J. H.'s vagina. Collins held J. H.'s legs open while he had sexual intercourse with her, which J. H. described as being painful since she "wasn't used to it" and it was "[her] first time."

J. H. recounted several additional incidents in which Collins had sexual intercourse with her. She further described multiple incidents in which Collins penetrated her vagina with his finger, made her touch his penis, and made her engage in oral sex.

J. H. disclosed the molestation to three of her friends. She did not disclose the incidents to her mother, however, because she was afraid.

On September 27, 2003, a deputy with the Baldwin County Sheriff's Department responded to a call regarding a domestic dispute between Collins and J. H.'s mother. At that time, J. H. informed the deputy that Collins had been touching her inappropriately. The deputy documented J. H.'s allegations and referred the

matter to a detective for further investigation.

On November 12, 2003, the molestation complaint was referred to an investigator with the Baldwin County Department of Family and Children Services ("DFACS"). During an interview with the DFACS investigator, J. H. disclosed the molestation incidents and stated that Collins had threatened to kill her and her family if she ever told her mother about the incidents.

Thereafter, on November 24, 2003, J. H. submitted to a forensic interview and a medical examination. A videotape of the forensic interview was admitted into evidence and played for the jury at trial. The pediatrician who performed the medical examination testified that she had observed a transection or tear with scar tissue on J. H.'s hymen, which was consistent with penetration and sexual abuse.

The State also presented evidence of similar transactions involving Collins's acts of molestation against other child victims. S. R., a friend of J. H., testified regarding an incident that occurred in 2002, during which Collins had put his hand underneath her skirt and touched her vagina with his finger. S. R. also stated that on two other occasions, Collins exposed his penis to her.

The evidence further reflected that in December 1989, when Collins was 19 years old, he had anal sex with his nine- or ten-year-old male cousin, T. R., which caused the child to be hospitalized with injuries to his anus. Based upon that incident, Collins was charged with aggravated child molestation, and he entered a guilty plea to the offense in 1990. T. R.'s sister, C. R., testified that in 1990, when she was 11 years old, Collins entered her bedroom and touched her breasts.

As a part of his defense, Collins claimed that J. H.'s molestation allegations lacked credibility since she was unable to point to any dates when the incidents allegedly occurred. To the extent that J. H. had claimed that the incidents occurred between the end of July and August 2003, Collins presented witnesses who testified that he had moved out of the residence by that time.

At the conclusion of the trial, the jury returned a verdict finding Collins guilty as charged on all counts.[1]

1. Collins contends that he is entitled to a new trial since the trial court erred in admitting J. H.'s testimony regarding her prior sexual history, reflecting that Collins was the first person with whom she had sexual intercourse. He argues that J. H.'s testimony was akin to stating that she was a virgin before the incident, which

---

[1] Although Collins does not enumerate the general grounds as error, we conclude that the evidence was sufficient to sustain his conviction. See OCGA § 16-6-4 (a), (c); *Jackson*, supra, 443 U. S. 307.

violated the provisions of the rape shield statute codified at OCGA § 24-2-3 (a). Notwithstanding his arguments, no ground for reversal has been shown.

In this regard, the record shows that J. H. testified that prior to the medical examination in November 2003, she had engaged in sexual intercourse with Collins and another male. Collins's counsel requested a bench conference and interposed an objection to the extent that J. H. would be testifying about her virginity and that Collins had been her first sexual partner. After hearing the arguments of counsel, the trial court ruled that the line of questioning would be allowed, but noted Collins's exception for the record. Upon resuming the direct examination, J. H. was permitted to testify that she had sexual intercourse with the other male after she had sex with Collins.

OCGA § 24-2-3 (a), Georgia's rape shield statute, provides in pertinent part:

> In any prosecution for a violation of . . . Code Section 16-6-4, relating to aggravated child molestation[2] . . . , evidence relating to the past sexual behavior of the complaining witness shall not be admissible, either as direct evidence or on cross-examination of the complaining witness or other witnesses, except as provided in this Code section. For the purposes of this Code section, evidence of past sexual behavior includes, but is not limited to, evidence of the complaining witness's . . . nonchastity[.]

(Punctuation omitted.) As an exception to the statute, however, evidence may be admitted to show that someone other than the defendant penetrated the victim and caused the victim's injuries. See *Tidwell v. State*, 306 Ga. App. 307, 311-312 (5) (701 SE2d 920) (2010). Accordingly, we have ruled that evidence relevant to prove the extent of the victim's injuries caused by the sex act is admissible. Id. However, there is a distinction between proper evidence pertaining to the cause and extent of the victim's injuries, and improper evidence referring to the victim's virginity prior to the sex act. See

---

[2] Prior versions of the rape shield statute provided that it applied only to prosecutions for rape. See *Robinson v. State*, 308 Ga. App. 562, 566 (708 SE2d 303) (2011). In 2005, the rape shield statute was amended to extend its applicability beyond rape to prosecutions related to aggravated sodomy, aggravated child molestation, and aggravated sexual battery. See Ga. L. 2005, pp. 20, 27, § 13.1/HB 170. The amended statute applies to all trials which commenced on or after July 1, 2005. See Ga. L. 2005, pp. 20, 29, § 17. To the extent that Collins was charged with three counts of aggravated child molestation, for which he was tried in September 2005, the amended statute applied in this case. See id.; *Robinson*, supra, 308 Ga. App. at 567 (concluding that the amended rape shield statute applies to aggravated child molestation cases, but not to child molestation cases).

*Herndon v. State*, 232 Ga. App. 129, 132 (2) (499 SE2d 918) (1998). We have held that the latter amounts to an unnecessary comment on the victim's prior sexual history and is inadmissible under the rape shield law. Id.

Here, the State contends that the challenged testimony was necessary to explain the pain that the victim felt during the first incident of sexual intercourse with Collins and was required to prove the aggravated child molestation charged in Count 9 of the indictment.[3] The State further notes that no testimony ever referred to the victim as a "virgin."

"Assuming arguendo the trial court improperly admitted the testimony, the error would have been harmless. By the time [Collins] interposed any objection, the jury had already heard similar testimony from [J. H.] which was admitted without challenge." (Citations and punctuation omitted.) *Maher v. State*, 216 Ga. App. 666 (1) (455 SE2d 377) (1995). Significantly, before the challenged testimony was presented, J. H. had testified that during her first incident of sexual intercourse with Collins "[i]t was hurting because [she] wasn't used to it" and it was her "first time and it was hurting." Collins did not object to this testimony. Moreover, Collins's counsel delved further into the issue during his cross-examination of J. H., which highlighted inconsistencies in the alleged dates when she claimed the sexual intercourse with Collins, as opposed to the other male, had occurred. Since the challenged testimony was cumulative of J. H.'s other testimony regarding the same fact, its admission was harmless. See id. See also *Osmer v. State*, 275 Ga. App. 506, 508 (1) (621 SE2d 519) (2005) ("The admission of cumulative evidence is harmless.") (punctuation and footnote omitted).

2. Collins further contends that the trial court erred in admitting the similar transaction evidence of his prior 1990 aggravated child molestation conviction. He claims that the evidence was inadmissible because over thirteen years had elapsed since the date of the prior conviction, and because there was no similarity given that the prior incident involved a nine- or ten-year-old male. We disagree.

> The exception to the general rule that evidence of other crimes is not admissible has been most liberally extended in the area of sexual offenses: In crimes involving sexual offenses, evidence of similar previous transactions is admissible to show the lustful disposition of the defendant and to

---

[3] Count 9 of the indictment pertinently charged that Collins had committed the offense of aggravated child molestation by engaging in sexual intercourse with J. H., which caused her to sustain physical injury.

corroborate the victim's testimony. There need only be evidence that the defendant was the perpetrator of both crimes and sufficient similarity or connection between the independent crime and the offenses charged.

(Footnote omitted.) *Brown v. State*, 275 Ga. App. 281, 284 (2) (620 SE2d 394) (2005).

The trial court conducted a pretrial hearing to determine the admissibility of the similar transaction evidence pursuant to *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991), and ruled that the evidence of Collins's 1990 guilty plea was admissible for the proper purpose of proving his intent and to corroborate the victim's testimony. The trial court further ruled that the evidence was sufficiently similar and that its probative value outweighed its prejudicial impact. In addition, the trial court ruled that even having considered the 13-year lapse of time since the conviction, the evidence was nonetheless admissible.

"A trial court's determination that similar transaction evidence is admissible will not be disturbed absent an abuse of discretion." (Punctuation and footnote omitted.) *Brown*, supra, 275 Ga. App. at 284 (2). The trial court did not abuse its discretion in admitting the similar transaction evidence in this case. There is no requirement that similar transactions be absolutely identical to the charged crime. See *Perkins v. State*, 224 Ga. App. 63, 66 (3) (479 SE2d 471) (1996). The mere difference in the victims' ages, sex, and specific acts of molestation did not render the similar transaction inadmissible. See *Woods v. State*, 304 Ga. App. 403, 406 (2) (696 SE2d 411) (2010) (generally, the sexual molestation of children, regardless of the type of act, is sufficiently similar to be admissible as similar transaction evidence; a mere difference in the ages of the victims does not render the evidence inadmissible); *Copeland v. State*, 276 Ga. App. 834, 835-837 (1) (625 SE2d 100) (2005) (defendant's prior molestation of a 17-year-old girl was admissible as similar transaction evidence in his subsequent trial for the molestation of a 12-year-old boy). Rather, evidence that Collins had previously molested a child who was substantially younger than him was sufficient to establish the similarity. See id.

Moreover, the 13-year lapse of time between the prior conviction and the crimes at issue in this case did not require exclusion of the evidence. See *Hall v. State*, 287 Ga. 755, 757 (2) (699 SE2d 321) (2010) (admitting evidence of 13-year and 15-year-old prior incidents as similar transactions). "Where, as here, the similar transaction evidence is otherwise admissible, a time lapse such as this goes to the weight and credibility of the evidence and does not demand its exclusion." (Punctuation and footnote omitted.) *Copeland*, supra,

276 Ga. App. at 837 (1).[4]

3. Collins next contends that his trial counsel was ineffective for failing to challenge the similar transaction evidence of his 1990 conviction on the basis of lack of similarity and prejudicial impact. He otherwise acknowledges, however, that a determination that the evidence was properly admitted renders his claim meritless. Having determined that the 1990 conviction was admissible in Division 2 above, Collins's claim for ineffective assistance of counsel fails.

4. Collins claims that the trial court erred in denying his motion for a mistrial after the DFACS investigator testified that Collins had sex with some of J. H.'s friends.

"We review the denial of a motion for mistrial under an abuse of discretion standard." (Citation omitted.) *Davis v. State*, 263 Ga. App. 230, 233 (2) (587 SE2d 398) (2003). It is true that the DFACS investigator's testimony constituted inadmissible double hearsay. See OCGA § 24-3-1 (a) (defining hearsay); *Sullivan v. State*, 295 Ga. App. 145, 151 (4) (671 SE2d 180) (2008). Nevertheless, the record reflects that the DFACS investigator's improper remark was fleeting, unsolicited, and unresponsive to the prosecutor's examination question. See *Boatright v. State*, 308 Ga. App. 266, 268 (1) (a) (707 SE2d 158) (2011) (a motion for a mistrial was not required since the improper remarks were fleeting, unsolicited, and unresponsive to the prosecutor's questions); *Quimbley v. State*, 276 Ga. App. 174, 175 (1) (a) (622 SE2d 879) (2005) (same). Moreover, any prejudicial impact of the remark was lessened by properly admitted similar transaction evidence that Collins had molested J. H.'s friend, S. R. See *Ranalli v. State*, 197 Ga. App. 360, 364-365 (4) (398 SE2d 420) (1990). Under these circumstances, the trial court did not abuse its discretion in denying the motion for a mistrial. See id.

Likewise, since Collins did not request curative instructions to address the remark, there is no merit to his complaint that none were given. "In no case will the trial judge's ruling be reversed for not going further than requested." (Citations and punctuation omitted.) *Davis*, supra, 263 Ga. App. at 233 (2). "An assertion that the trial court erred in failing to give a curative instruction is not preserved for review when no curative instruction was requested at trial." (Citation omitted.) *Williams v. State*, 236 Ga. App. 503, 504

---

[4] Compare *Maynard v. State*, 282 Ga. App. 598, 602-604 (3) (639 SE2d 389) (2006) (concluding that evidence of defendant's sexual misconduct that occurred 20 years prior was inadmissible since defendant himself was a 12-year-old child at the time of the prior incidents). In the instant case, however, Collins was 19 years old, over the age of majority, when he committed the prior molestation acts. Moreover, the evidence reflected Collins's pattern of molesting his child family members and their friends. See, e.g., *Perkins*, supra, 224 Ga. App. at 66 (3).

(512 SE2d 387) (1999).

5. Lastly, Collins asserts that the trial court erroneously allowed the State to ask improper voir dire questions. In this regard, he argues that the following voir dire questions were improper:

> Is there anyone on the panel that believes a child should have to physically resist an adult in order to hold the adult accountable? That they have to fight back? Kick, scream, bite, scratch? . . . Would you feel the same way even if the child went willingly?

> Is there anyone on this panel [who] is of the opinion . . . that if a child does not disclose immediately, that they are less worthy of belief? . . . Is there anyone on the panel [who] is of the opinion that victims always cry? . . . Is there anyone on the panel [who] can tell me what they were doing specifically one year ago today? . . . So the fact that you don't specifically remember doesn't mean that you weren't at work?

> When you have described your event or your son's event, . . . has there ever come a time that you forgot a date? . . . Has there ever come a time that maybe you forgot some of the details of what happened? . . . Now, because you forgot the details and maybe forgot a date, does that mean that those events didn't happen?

> [I]n your capacity as a supervisor, have you ever had individuals who come before you and they've had opposing versions of events and as the supervisor, you had to determine what was the truth and what wasn't the truth? . . . Were you able to make a determination as to who was telling the truth and who wasn't? . . . Did you have DNA to help you? . . . Hair fibers?. . . A video tape?

The conduct and scope of voir dire is governed by OCGA § 15-12-133, which pertinently authorizes counsel for either party the right to

> inquire of the individual jurors examined touching any matter or thing which would illustrate any interest of the juror in the case, including any opinion as to which party ought to prevail, the relationship or acquaintance of the juror with the parties or counsel therefor, any fact or circumstance indicating any inclination, leaning, or bias which the juror might have respecting the subject matter of the action[.]

Accordingly, counsel are allowed to ask questions which are designed

to ascertain the prospective jurors' ability to treat the cause on the merits with objectivity and freedom from bias and prior inclination. See *Stewart v. State*, 262 Ga. App. 426, 427 (1) (585 SE2d 622) (2003). However, "[q]uestions of a technical legal nature and questions that call for prejudgment are improper in a voir dire examination." (Citation and punctuation omitted.) Id. at 427-428 (1).

> Since there is often a fine line between asking potential jurors how they would decide the case and questions that merely seek to expose bias or prejudice, the scope of the voir dire examination, of necessity, must be left to the sound discretion of the trial court. And this Court does not interfere with such discretion absent manifest abuse.

(Citations and punctuation omitted.) Id. at 427 (1).

The challenged voir dire questions, as set forth above, were properly posed by the State "to determine whether [the] prospective jurors had preconceived notions regarding the subject matter of the case[.]" *Davis v. State*, 264 Ga. App. 128, 133 (3) (589 SE2d 700) (2003). The questions did not ask the jurors to prejudge the evidence or the factual issues in the case. See *Childers v. State*, 228 Ga. App. 214, 215 (2) (491 SE2d 456) (1997). As such, the trial court did not abuse its discretion in permitting the State to ask the voir dire questions. Id.

*Judgment affirmed. Ellington, C. J., and Doyle, J., concur.*

DECIDED JULY 7, 2011.

*John H. Bradley*, for appellant.
*Fredric D. Bright, District Attorney, Charles L. Guerin IV, Daniel B. Cochran, Assistant District Attorneys*, for appellee.