## WILLIAMS *v.* THE STATE.

1. If the corpus delicti and the guilt of the defendant are both proved as the law requires, it will not furnish ground for a new trial that the court did not require the evidence to be so introduced as to divide it into two distinct parts, the first referring to the corpus delicti, and the second to the defendant's connection with the crime.

2. A letter written by one accused of a crime, a day or two after its commission, and containing statements favorable to himself, is not admissible in his own behalf.

3. Alibi, as a defense, involves the impossibility of the prisoner's presence at the scene of the offense at the time of its commission.

4. Where a defendant was charged with committing murder by administering poison evidence introduced for the purpose of proving that he was not present at the time and place when the State contended that he bought the poison, was proper for consideration under the plea of not guilty, but did not set up a distinct defense of alibi.

5. Where counsel for the defendant began to make objection to certain evidence, but the court interrupted him by saying that he could bring out on cross-examination that the testimony was improper, and it did not appear that the objection was ever completed, or the grounds stated, or any subsequent motion to rule out the evidence made, this furnishes no ground of a motion for a new trial.

6. Where the court properly charged the jury on the subject of reasonable doubt, a request to charge that a particular fact sought to be shown by the defense could create a reasonable doubt in the mind of the jury, was rightly refused.

7. After charging that, in order to convict upon circumstantial evidence, the proof must exclude every reasonable hypothesis except that of guilt, there was no error in refusing a request to give a charge which added that this rule should never be relaxed in a case involving life, or imprisonment for life.

8. There was no error in refusing to charge that the jury were to consider the evidence of expert witnesses as they did that which fell from the lips of other witnesses, and that the law permitted them to believe it in preference to other evidence, if there was conflict between the two; the request to charge leaving out of view any consideration of the credibility of the witnesses themselves or their opportunity for knowing the facts to which they testified, or the nature of such facts.

9. The verdict was sustained by the evidence, and there was no error in refusing a new trial.

Argued May 15, — Decided June 13, 190⅘

Indictment for murder.    Before Judge Hammond.    Richmond superior court.    March 25, 1905.

Neal Williams, colored, was indicted for the murder of Mattie Bell Devine.    He was convicted and sentenced to imprisonment for life.    He moved for a new trial, which was denied, and he ex-

cepted.   The evidence on behalf of the State was, in brief, as follows:   The defendant and deceased lived together in adultery. They sometimes quarreled, and had mutually cursed each other. About a week before the death of the woman, they had a quarrel, and she told him to leave.   He said when he left he would leave somebody sick or dead.   Several days after this, on Sunday, he went to a drug-store and bought a box of poison known as "rough on rats."   He inquired if it would dissolve in water or whisky, and aroused the suspicion of the clerk, so that the latter desired to retake the poison, but the druggist told the clerk to let him have it.   Defendant in making the purchase gave a fictitious name, claiming that his name was Charlie Hill.   He left on Monday, going from Augusta to Charleston, S. C.   On the day he left he broke up some furniture in the home belonging to the deceased, and cut the mattresses.   The woman was taken sick Monday night, and died Tuesday night.   She became sick after eating supper.   Her brother, who also ate there, became sick shortly afterwards.   Both exhibited symptoms of arsenic poisoning.   An antidote was administered to the brother, and he recovered.   The morning after her death a box partly filled with "rough on rats" was found on a sill over the door.   A bucket in the house containing flour exhibited signs of having something mixed in it which appeared to be a powder differing in color from the flour. This flour and some biscuits which had been cooked by the deceased were examined by a chemical test and found to contain arsenic.   The witness who so testified stated, on cross-examination, that the test used would show the presence of arsenic or antimony; that the analysis was not carried further to differentiate between arsenic and antimony, for the reason that both of them are irritant poisons, and antimony is not contained in "rough on rats," which is mainly composed of arsenic.   The stomach of the woman was taken out and afterwards examined, but no arsenic was found in it.   It had certain red splotches or spots upon it which one of the witnesses testified might have been the result of an irritant.   A physician testified on this subject as follows: "Upon opening the stomach itself, we found that the mucous membrane was somewhat softened in appearance and that there were one or two large reddened spots upon the mucous-membrane lining.   Those reddened spots could have been produced by any

irritant, or by some of this powder, "rough on rats." The effect
of an irritant poison is to cause violent vomiting and purging.
Arsenic is an irritant poison. It would be absorbed or eliminated
by the system after it had remained in the stomach some time; it
is not a cumulative poison; it is rapidly eliminated. It may stay
sometimes, but it can be, and is frequently, rapidly eliminated.
Where it is eliminated by absorption and by vomiting, there are
cases on record where the stomach showed absolutely no signs of
it at all. Where signs of it are left, those signs are the reddened
spots I have spoken of, and possibly a reddened spot would give
the appearance of an actual burn, but certainly the most char-
acteristic finding would be these reddened areas. I wrote on her
death certificate 'arsenic poison;' it was, in my opinion, the cause
of her death."

A negro woman testified that the defendant had asked her, on
Sunday, if she had any concentrated lye, or any rat poison, saying
that he had two old cats that drank out of his water bucket.
Another testified that he applied to her for strychnine on Sunday
evening. Another testified, that on Monday the deceased and her-
self were walking on the street, when the defendant came up and
obtained from the deceased a key to the house where they were
living; that when the witness went back to the house the defend-
ant was gone, the door locked, and the key in the door; that the
defendant and the deceased had a fuss on the Tuesday preceding,
and that he said he was going to kill her before he got off.
Another witness testified that the defendant applied to her for
some "red-seal lye," saying that he wanted to kill two old black
cats; but she fixed the time of the application as being on Mon-
day. The defendant was arrested in Charleston and brought back
to Augusta. There was other evidence, which it is not necessary
to set out in detail.

*Oswell R. Eve*, for plaintiff in error. *John C. Hart, attorney-
general,* and *J. S. Reynolds, solicitor-general,* contra.

LUMPKIN, J. (After stating the facts.) 1. Counsel for de-
fendant objected to the introduction of any evidence against the
accused until the corpus delicti had first been proved by the
State. There was no error in overruling this objection. The
order in which evidence is allowed to be introduced must rest, to
a considerable extent, in the sound discretion of the presiding

judge. Sometimes the corpus delicti may be proved separately, and evidence tending to connect the accused with the offense produced afterwards. In other cases proof of the corpus delicti and of the connection of the defendant with it is so interwoven as to be practically inseparable in the introduction of evidence. Thus if a defendant were charged with murder by shooting another, it would be difficult to prove the homicide as an independent fact before showing that the defendant was the perpetrator. If the corpus delicti and the guilt of the defendant are both proved as the law requires, it will not furnish him any ground for complaint that the evidence did not separate the case into two distinct parts and refer to each separately.

2. A letter was offered in evidence which had been written by the defendant from, Charleston, a day· or two after the woman's death, to a witness sworn in his behalf who resided at Augusta, telling of his arrival in Charleston and his compliance with a request previously made by the witness, explaining why he had gone to Charleston on "the former" excursion, and requesting the witness to address a reply to him at that point. This was properly rejected by the court. It amounted to offering declarations of the defendant in his own favor, forming no part of the res gestæ, or, as it is sometimes expressed, self-serving declarations. *Dixon* v. *State*, 116 *Ga.* 186; *Boston* v. *State*, 94 *Ga.* 590.

3, 4. Complaint is made that the court charged that the defendant set up the plea of alibi, besides that of not guilty, and defined alibi to mean absence from the scene of the alleged crime at the time of its commission, thus making it impossible for him to have perpetrated it. The court gave a correct definition of the defense of alibi, and correctly applied it. Penal Code, § 992. The contention made by counsel for defendant is that the alibi sought to be shown by him was that he was at a different place at the time when the State endeavored to prove that he purchased poison. This would not be a defense of alibi, but merely evidence conflicting with some of that introduced by the State, and would be for the consideration of the jury under the plea of not guilty. The court did not err, therefore, in failing to charge upon this contention of the defendant as if it were a plea of alibi.

5. Objection was made to allowing a witness to testify that he

saw the bread, some of which he was told the deceased had eaten. As appears in the motion for new trial, however, the ground of objection was not stated. The court and counsel had a colloquy, which resulted in the evidence remaining in, the court saying that counsel could show its impropriety on cross-examination. This court can not pass on the alleged error without having before it the ground of objection made to the evidence at the time when it was offered. As to not ruling it out later; see *Stone* v. *State*, 118 *Ga.* 705 (9); *Cawthon* v. *State*, 119 *Ga.* 396.

6. It is contended that the court erred in refusing a request to give the following charge: " I charge you that the failure to find arsenic in the stomach of the deceased could create a reasonable doubt in your mind as to the guilt of the accused; and if that doubt is with you, you can not convict the accused." This request was properly refused. It singled out a particular piece of evidence and sought to have the jury instructed, in effect, that it could be sufficient to create a reasonable doubt in their minds. The charge fairly instructed the jury on the subject of reasonable doubt. *McDuffie* v. *State*, 90 *Ga.* 786; *Delk* v. *State*, 92 *Ga.* 453.

7. The rule that, in order to convict upon circumstantial evidence, the proof must exclude every reasonable hypothesis except that of guilt, was given in charge by the court. Defendant's counsel made a request to charge, which was a substantial repetition of the charge given, with the added clause, " and this rule should never be relaxed in a case involving life, or imprisonment for life." This was a purely argumentative addition to the rule of law, and was rightly refused by the court. The use of language of this character by a Justice of the Supreme Court in discussing the facts of a particular case (*Martin* v. *State*, 38 *Ga.* 295), does not necessarily render it proper for use by a judge of a trial court in charging the jury. *Atlanta & West Point R. Co.* v. *Hudson*, ante, 108.

8. Error was alleged because the court declined to give the following request to charge: " I charge you that you are to consider the evidence of expert witnesses as you do that which falls from the lips of other witnesses. The law permits you to believe it in preference to the other evidence, if there is a conflict between the two." The court left the jury to determine the weight of the evidence, and properly refused this request. In

it the credibility of the witnesses themselves was entirely left out of view, as well as their opportunity for knowing the facts to which they testified, and the nature of such facts. That a witness may be an expert does not furnish ground for disbelieving him, but his evidence is to be weighed by the jury; and the rules applicable to determining the weight to be given other evidence are also applicable as to experts. *Merritt* v. *State*, 107 *Ga.* 676 (4); *Ryder* v. *State*, 100 *Ga.* 529 (6).

9. The verdict was sustained by the evidence, and there was no error requiring a new trial.

*Judgment affirmed. All the Justices concur, except Simmons, C. J., absent.*