### 67076. WATERS v. THE STATE.

Birdsong, Judge.

Loy Starling Waters was convicted of theft by taking (a one-ton repair truck with repair parts for diesel engine repairs) and sentenced to twenty years, eight to serve followed by twelve on probation. He brings this appeal enumerating two alleged errors. *Held:*

1. Waters does not contest the sufficiency of the evidence to support the findings of guilt nor the regularity of the punishment imposed. The evidence clearly shows the theft alleged to have been committed and is amply sufficient to show Waters' participation in that theft. *Baldwin v. State,* 153 Ga. App. 35, 37 (264 SE2d 528).

2. Appellant's two enumerations of error deal with the admission into evidence of alleged criminal misconduct by Waters

admitted by Waters to one of two co-defendants, thus placing Waters' character into issue when he himself had not introduced that subject.

Appellant testified at length in his own defense. He admitted that he had been approached by one of the co-defendants (Avery) and asked if he could remove a cab from a truck and replace it with another. In payment for this work, Waters was to receive approximately $11,000 to $12,000 worth of tools that were on the truck (the personal property of another of the co-defendants, Tackett). Waters admitted going to the home of Tackett, who was the operator of the truck, and driving the truck back to a prearranged location where Waters commenced to disassemble the truck. Waters maintained that he did not find the tools that were supposed to be on the truck as his payment. Therefore, he took all the diesel repair parts and offered them for sale in order to recover the payment for his work. Having determined (after he had taken the truck) that it was reported as stolen, Waters disassembled the truck in order to dispose of it. He was connected to the theft of the truck and the repair parts through his offer to sell the repair parts. In substance, therefore, Waters contended that he acted in good faith in taking the truck and attempting to sell the repair parts and had no knowledge that the truck was not a bona fide repair job until after he had already commenced the work.

In rebuttal to this, Avery related that he lived next door to Tackett. Tackett drove the truck regularly and kept it at his home because he was on repair call 24 hours of the day. Tackett allegedly suggested to Avery that he was looking for someone who would steal the truck or at least the tools off the truck so he could recover the insurance. With these proceeds, Tackett would be able to return to Tennessee. Avery indicated he did not know any such person. Once again, a week or so later, Tackett broached the same subject.

Shortly thereafter, Avery met Waters through a mutual friend. Soon after this meeting, Waters visited in Avery's home. Upon observing the numerous guns and other valuables in Avery's home, Waters allegedly remarked that if this was not a friend's property, with one phone call he could clean it all out in five minutes. Several days later when Avery and Waters were riding in a Jeep, Waters remarked how much he admired that kind of a vehicle and that he had owned or stolen several before. After these conversations, Avery allegedly reported to Tackett that he had met the kind of person Tackett was looking for and would bring the two men together. This meeting in fact was arranged.

These two comments allegedly made by Waters to Avery form the basis for the two enumerations of error. In each case when the

evidence was offered, Waters through counsel made vigorous objection and moved for mistrial.

As to the first remark by Avery, proper context shows that while Waters was on the stand he expressly and emphatically denied that any such conversation between himself and Avery occurred. Consequently, the trial court allowed the fact that such a conversation may have occurred as impeaching testimony going to the credibility of Waters' testimony that he was an innocent victim of someone else's criminal machinations.

As to Avery's second remark that Waters had owned and stolen such vehicles before, the trial court chastised both the witness, for making what apparently was an unsolicited response, and the prosecutor. The court then strongly charged the jury that it could not consider the remark of the witness. The court inquired of the jurors whether they could consider the case in complete disregard of the comment. The jurors indicated that they would completely disregard the unsolicited answer.

Subsequently upon further examination of Avery, counsel attempted once again to go into Avery's conversation with Tackett that Avery had found Tackett's man. This evidence was admitted to explain Avery's conduct in relation to why Avery had the conversation with Tackett about Waters.

Under the facts of this case, we are satisfied that Avery's testimony concerning Waters' conversations about cleaning out the house and Avery's subsequent disclosure to Tackett was relevant and admissible either for purposes of impeachment (Waters having denied any such conversation) and to show the probability that Waters was more than just an innocent and casual bystander to a criminal conspiracy between Avery and Tackett. We are satisfied that the evidence was appropriate either for impeachment purposes or to show intent, scheme, or a plan or course of conduct. *Ranger v. State,* 249 Ga. 315, 318, 322 (290 SE2d 63); *Smith v. State,* 142 Ga. App. 1, 2-3 (2) (234 SE2d 816). Further, inasmuch as the evidence was otherwise admissible, the mere fact that it may have tended to place Waters' character into evidence is incidental to its admissibility and is not harmful. *McKenzie v. State,* 248 Ga. 294, 296 (5) (282 SE2d 95).

As to the unsolicited comment by Avery that Waters had bragged of either owning or stealing Jeep-type vehicles, we must consider the strong corrective actions taken by the trial court. While appellant argues that a "rung bell" cannot be "unrung," nevertheless, we are persuaded that the corrective action taken by the trial court was effective and appropriate to the situation. Where a motion for mistrial is made on the ground of inadmissible evidence illegally placed before the jury, the corrective measure to be taken by the trial

court is largely a matter of discretion, and where proper corrective action is taken and no indication of an abuse of that discretion appears, the refusal to grant a mistrial is not error. *Osteen v. State,* 83 Ga. App. 378, 381 (63 SE2d 692). Even if we assume the admission of the evidence to be improper, where illegal testimony is volunteered by a witness in answer to a question asked, and where such answer is ruled out, it ordinarily is not an abuse of discretion to refuse to grant a mistrial. *Jones v. State,* 139 Ga. App. 643, 644 (229 SE2d 121). We find no error harmful to the appellant's substantial rights in this case.

*Judgment affirmed. Shulman, C. J., and McMurray, P. J., concur.*

DECIDED NOVEMBER 18, 1983.

*Thomas E. Shanahan,* for appellant.
*Darrell E. Wilson, District Attorney, Mickey R. Thacker, Assistant District Attorney,* for appellee.