A95A0918. McKINNEY v. THE STATE.
(463 SE2d 136)

McMurray, Presiding Judge.

Defendant was charged in an indictment with burglary, aggravated assault by use of a deadly weapon, and kidnapping. At defendant's jury trial, the victim was declared "not competent to testify," due to her feebleness, hearing impairment and the effects of Alzheimer's disease. However, defendant's own incriminating statements, as well as expert opinion analysis of deoxyribonucleic acid ("DNA") evidence, showed that defendant broke into the home of the elderly victim, advanced upon her wielding a pipe and threatened her before forcing her into a bedroom, where he tied her up with sheets.

Officer Barry Williams of the Valdosta Police Department answered a robbery call at the victim's address. There, he found the victim hysterical and shaking tremendously. He "saw blood on her." She cried out, " 'They got me, they got me.' " Officer Williams was then permitted to relate for the jury the circumstances as related to him by the victim: The victim was talking on the telephone in her dining room when she heard a noise coming from the kitchen. As she went to investigate, she was approached by a male, "about five ten in height, wearing a brown jacket." He had a steel pipe in his hand and told the victim, "if you yell, I'll kill you." The perpetrator then took the victim into the "southwest bedroom and tied her in the bed sheets and a phone cord." Although the sheets were over her face, "she could hear him searching, running — going through her things." The victim got loose and fought with the perpetrator, such that "he was bleeding from somewhere. . . ." She then ran out of the house and started yelling for help. The victim subsequently discovered that a diamond ring and gold wristwatch were missing from the bedroom. Officer Williams personally observed papers scattered in the dining area and a chair overturned. In the bedroom, he "found the sheets like somebody had been tied up in the sheets, and the phone cord wrapped around the sheets." The "north side back door and one of the north windows were busted out."

Defendant's brother related defendant's admission that he (defendant) had gone into their neighbor's home, where "they tussled. . . ." Defendant "had her [tied up] in the sheets but she come out." "She scratched [defendant] and ran to the door hollering." Defendant further admitted obtaining jewelry from the victim's home. Geneva McLowery overheard defendant's statement to his brother, that he "broke into the lady's house. And he told [his brother] that he

basically just — that he beat her up, he put her in a sheet and tied her up and put her in the closet, and . . . tried to kill her." Geneva McLowery noticed that defendant "had scratches on his neck."

George Herrin, Jr., Ph.D., the DNA Unit Supervisor in the Division of Forensic Sciences, Georgia Bureau of Investigation, testified that there was a so-called match between "the DNA banding pattern obtained from the blood identified as having come from [defendant] and the DNA banding pattern obtained from the blood stain on the [victim's] sheet." A "match" is a visual determination that "the position of the DNA bands on . . . test results . . . are close enough . . ." within certain testing parameters. This visual match is then confirmed with a mathematical match. The statistical frequency of this banding pattern in the population of defendant's race "is approximately one in 200 million." In Dr. Herrin's opinion, defendant's brother "could not have been the donor of the blood stain on the sheet."

The jury found him guilty on each charge and this direct appeal followed. *Held*:

1. Defendant's fifth enumeration contends the trial court erred in admitting statements "allegedly made by the victim as res gestae. . . ." The record reflects that the sole ground for objection to Officer Williams' testimony in this regard was "hearsay."

"This testimony as to what the victim told the witness very shortly after the attack was properly admissible as part of the res gestae pursuant to OCGA § 24-3-3. *Haralson v. State*, 234 Ga. 406, 407-408 (3) (216 SE2d 304) (1975); *Barker v. State*, 144 Ga. App. 339-340 (2) (241 SE2d 11) (1977). 'The fact that some of the statements (might have been) in reply to questions of the (witness) would not render them inadmissible. (Cits.)' *Littles v. State*, 236 Ga. 651, 652 (2) (224 SE2d 918) (1976). 'Such evidence should be admitted if it is relevant and made without premeditation. (Cit.) A trial (court's) determination that evidence is admissible as part of the res gestae will not be disturbed unless it is clearly erroneous. (Cit.)' *Robinson v. State*, 197 Ga. App. 600, 601 (2) (399 SE2d 94) (1990)." *Brinson v. State*, 208 Ga. App. 556 (1), 557 (430 SE2d 875). In the case sub judice, we find no error in allowing the investigating officer to relate for the jury the distraught victim's on-the-scene description of the attack upon her, including her description of the assailant, even though this evidence is more narrative than exclamatory.

2. In his first enumeration, defendant challenges the sufficiency of the evidence to convict, but only as to "the charge of aggravated assault under Count 2 of the Indictment." He argues that there is "no testimony of injuries received by the victim by use of [a] pipe."

This argument confuses assault with battery. " 'Aggravated assault with a deadly weapon is completed when a simple assault is

committed by means of a deadly weapon,' *Scott v. State*, 141 Ga. App. 848, 849 (234 SE2d 685) (1977), and neither type of assault requires physical contact with the victim. . . . Physical contact is required for a simple battery but not for aggravated assault." *Tuggle v. State*, 145 Ga. App. 603 (1), 604 (244 SE2d 131). See also *Anderson v. State*, 170 Ga. App. 634 (317 SE2d 877).

Nevertheless, defendant further argues there is no evidence of any assault because there is no evidence of a reasonable apprehension on the part of the victim. "The state of mind of the victim of an assault is a question of fact, which may be established by circumstantial evidence. *McGee v. State*, 165 Ga. App. 423, 425 (3) (299 SE2d 573). In the case sub judice, [Officer Williams' res gestae] testimony that [the victim] fled in terror from [the man who broke into her home and advanced upon her with a steel pipe plus his direct testimony that she was immediately thereafter hysterical and shaking visibly] is sufficient circumstantial evidence that [defendant] placed [her] in 'a reasonable apprehension of immediately receiving a violent injury,' as alleged in [Count 2 of] the indictment. See *Holbrook v. State*, 168 Ga. App. 380, 381 (2) (308 SE2d 869)." *Lewis v. State*, 215 Ga. App. 161, 162 (2), 163 (450 SE2d 448). A metal pipe is capable of causing serious injury when used offensively. See *Coney v. State*, 209 Ga. App. 9, 12 (3) (432 SE2d 812). The evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) to authorize the jury's verdict that defendant is guilty, beyond a reasonable doubt, of aggravated assault with a deadly weapon in violation of OCGA § 16-5-21 (a) (2).

3. The denial of defendant's pre-trial motion for the appointment of an expert to conduct an independent DNA analysis is enumerated as error, on the ground that this deprived defendant of a "fair trial and equal treatment under the law because of his economic status."

Unlike blood samples, ballistics reports, and other routine scientific analyses, defendant's request for the appointment of an independent expert to challenge the State's analysis of DNA band patterns arguably "involves critical evidence [within the meaning of *Sabel v. State*, 248 Ga. 10, 16 (6) (282 SE2d 61), overruled in part on other grounds, *Rower v. State*, 264 Ga. 323, 324 (5), 325 (443 SE2d 839), because forensic analysis of DNA], in light of its novelty, is likely to be the subject of varying expert opinions." *Thornton v. State*, 255 Ga. 434, 435 (2) (339 SE2d 240). Assuming, but not deciding, that the trial court in the case sub judice erred in failing to appoint defendant his own expert to critique the State's DNA evidence, we find any such error to be harmless beyond any reasonable doubt. " 'Scientific evidence is not "critical" where there is overwhelming evidence of defendant's guilt.' [*Sabel v. State*,] 248 Ga. [10, 16 (6)] at 18, footnote 3[, supra]." *Thornton v. State*, 255 Ga. 434, 435 (3), fn. 1, supra. "The

defendant's own confession is probably the most probative and damaging evidence that can be admitted against him. The defendant is the most knowledgeable and unimpeachable source of [any incriminating] information about his past conduct, and one can scarcely imagine evidence more damaging to his defense than his own admission of guilt." (Citations and punctuation omitted.) *Sawyer v. State*, 217 Ga. App. 406, 407 (1), 408 (457 SE2d 685). In the case sub judice, defendant's incriminating statements, as related by his brother and Geneva McLowery, provided highly persuasive proof that it was defendant and not his brother who committed the burglary, aggravated assault, and kidnapping as alleged in the indictment. Consequently, the State's DNA evidence is not "the only connecting link between [defendant] and the [crimes alleged]." *Thornton v. State*, 255 Ga. 434, 435 (4), supra. See also *Willey v. State*, 209 Ga. App. 398, 399 (2), 400 (433 SE2d 674). It follows that any error in failing to appoint an independent DNA expert was harmless in this instance.

4. The trial court did not abuse its discretion in permitting the State, over defendant's "chain of custody" objection, to introduce testimony identifying blood samples as coming from defendant, his brother, and the victim, where the admission of such evidence was made conditional upon the State's "connecting up" those samples with the proper chain of custody. "[T]he order of presentation of evidence is a matter that rests within the trial court's discretion which will not be controlled unless abused. *Williams v. State*, 123 Ga. 138[, 140 (1)] (51 SE 322)." *Brown v. State*, 140 Ga. App. 198 (1), 199 (230 SE2d 349). Accord *Gilstrap v. State*, 261 Ga. 798, 799 (2) (410 SE2d 423). In the case sub judice, review of the entire record demonstrates that the blood samples of defendant, his brother, and the victim were drawn and handled in the normal course of testing. This is sufficient to establish the identity of each sample with reasonable assurance. *Patterson v. State*, 224 Ga. 197, 199 (2) (160 SE2d 815). We find no abuse of the trial court's discretion.

5. After a period of deliberation, the jury announced that it had reached verdicts as to two of the three counts of the indictment, but that they had "not received a unanimous verdict on count three of the kidnapping; [and queried:] must we have a unanimous decision[?]" The trial court answered this in the affirmative, recharging the jury that "in order for there to be a decision, it must be unanimous." The trial court explained that, "if the jury cannot reach a decision *on that charge*, after a period of time, . . . then there would be a necessity to declare a mistrial *as to that particular charge*." (Emphasis supplied.) In his fourth enumeration, defendant contends the trial court's additional instructions were prejudicial, arguing it "left the jury to believe that a mistrial would be declared as to all counts and not just to count three." We disagree. Words are given their ordi-

nary signification and the jury is given credit for possessing ordinary intelligence. *Hightower v. State*, 210 Ga. App. 386, 387 (3), 388 (436 SE2d 28); *Yearwood v. State*, 198 Ga. App. 389, 390 (3) (401 SE2d 558). In the case sub judice, the trial court's recharge explaining that a hung jury would result in a mistrial for "that particular charge" meant only that particular charge and could not reasonably be interpreted as jeopardizing the jury's existing unanimous verdicts as to the other two counts. This enumeration is without merit.

*Judgment affirmed. Andrews and Blackburn, JJ., concur.*

DECIDED OCTOBER 3, 1995.

*Jon W. McClure*, for appellant.

*H. Lamar Cole, District Attorney, J. David Miller, Assistant District Attorney*, for appellee.