S06A0474. PASCHAL v. THE STATE.
(628 SE2d 586)

THOMPSON, Justice.

Russell J'Nee Paschal was convicted of murder and possession of a knife during the commission of a crime arising from the stabbing death of DeCarla Harris.[1] On appeal Paschal asserts that the trial court erred in allowing the admission of certain DNA evidence because the State failed to establish a chain of custody. Finding no error, we affirm. But because Paschal received two life sentences for the murder of a single victim his sentence for felony murder must be vacated for the reasons which follow.

Paschal and Harris lived in the same apartment complex. Paschal had regularly purchased marijuana from Harris and he knew that she stored quantities of the drug in her apartment. Earlier in the day of the stabbing, Paschal purchased marijuana from the victim, and he told her he would return later that night to transact more business with her. Around midnight, a neighbor observed Paschal knocking on the victim's door. At about 1:30 a.m., another neighbor

---

[1] The crimes were committed between October 4 and 5, 1994. A true bill of indictment was returned on February 6, 2001, charging Paschal with malice murder, felony murder predicated on aggravated assault, and possession of a knife during the commission of a crime. Trial commenced on September 16, 2002, and Paschal was found guilty as charged on September 19, 2002. He was sentenced on October 18, 2002 to two terms of life imprisonment for murder, plus five consecutive years on the weapon offense. A motion for new trial was filed on November 15, 2002, and was denied on August 1, 2005. A timely notice of appeal was filed and the case was docketed in this Court on November 16, 2005. Oral argument was heard on March 14, 2006.

was returning to her apartment when Paschal almost knocked her down as he ran out of the victim's building toward his own apartment. He was shirtless and sweating profusely.

The victim's brother found her body the next morning and called the police. Her jugular vein had been severed, causing massive blood loss and death. The officers who responded to the crime scene observed what appeared to be a blood smear on the back door of the victim's apartment building, leading to a chain link fence. An officer walked the exterior and noticed a dish towel on the fence near the rear of the building. He also found the blade of a knife and a white washcloth, which appeared to be stained with blood, on the ground. The unattached handle to the knife was located nearby. The officers photographed the items as they were positioned at the fence, and then collected and logged them. The crime scene technician working the scene placed the items in an evidence bag and transported them to a serologist at the Augusta crime lab later that day.

Police canvassed the neighborhood and interviewed Paschal. He appeared to be "sweaty, shaky [and] nervous," and had an open cut on his finger. He gave the officers consent to search his apartment, and he voluntarily relinquished two "dime bags" of marijuana and a pillowcase stained with blood. A warrant was obtained and during a second search the police removed a used bandage from between Paschal's mattress and box spring.

At trial, the State's DNA expert testified that the washcloth was stained with blood from both Paschal and the victim.

1. The evidence was sufficient for a rational trier of fact to have found Paschal guilty beyond a reasonable doubt of the crimes of murder and possession of a knife during the commission of a crime. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Paschal asserts that the trial court erred in allowing the State's DNA expert to testify as to the results of DNA testing conducted on the white washcloth seized near the crime scene because the State failed to establish a chain of custody.

An officer who responded to the stabbing collected the washcloth along with other evidence at the scene, placed it in an evidence bag, and logged it as "T-5 Williamsburg Apartments." The items were delivered to the Augusta crime lab later that day by the crime scene technician who collected them at the scene. A serologist removed the washcloth, cut out and tested the stained areas, and determined that it contained human blood. The serologist then sent the evidence to the Atlanta crime lab for further analysis. DNA testing was available at the time of the 1994 crime, but the method of testing then required larger samples of DNA material than is now needed. DNA analysis was attempted at that time, but some of the evidence yielded no results. From 1994 until 2001, the labeled items were stored in a

secured cold room at the Atlanta crime lab. By 2001, DNA testing could be performed on minute specimens, and GBI DNA-analyst Pickens received a request to do additional testing. She retrieved the evidence which was marked with a case number and crime lab bar code, tested it, and determined that it was stained with blood from both the victim and Paschal.

Analyst Pickens was the first witness to testify concerning the existence of the washcloth and the DNA results obtained therefrom. Defense counsel objected, asserting that her testimony was inadmissible without a chain of custody first having been established and without the item being admitted into evidence. The prosecutor responded that he called this witness first in order to accommodate her schedule and that he fully intended to "link this up." He also stated that he did not intend to introduce the blood-stained fabric into evidence because it presented a "biological hazard." The trial court allowed analyst Pickens to testify as to the DNA results over Paschal's objection and motion for mistrial. The court noted, however, that if the State did not subsequently establish a chain of custody, the evidence would be withdrawn from the jury's consideration.

"When blood samples are handled in a routine manner and nothing in the record raises a suspicion that the blood sought to be admitted is not the blood tested, the blood is admissible and the circumstances of each case need only establish reasonable assurance of the identity of the sample. [Cit.]" (Punctuation omitted.) *Johnson v. State*, 271 Ga. 375, 382 (13) (519 SE2d 221) (1999). Subsequent to analyst Pickens' testimony, the State produced the investigating officers, the crime scene technician, and the Augusta serologist who each testified as to the chain of custody. "The order in which evidence is allowed to be introduced must rest, to a considerable extent, in the sound discretion of the [trial] judge." *Williams v. State*, 123 Ga. 138, 140-141 (1) (51 SE 322) (1905). And it is not necessarily an abuse of discretion to allow the introduction of evidence of chain of custody in reverse order. *Sprinkles v. State*, 227 Ga. App. 112 (2) (488 SE2d 492) (1997); *McKinney v. State*, 218 Ga. App. 633 (4) (463 SE2d 136) (1995).

Here, the State met its burden of establishing with reasonable assurance that the blood tested at the Atlanta lab was the same blood taken from the washcloth at the scene of the crime. " 'Any confusion about the (evidence) goes to its weight, not its admissibility.' " *Sprinkles*, supra at 114. Accordingly, the trial court did not abuse its discretion in allowing analyst Pickens to testify as to the DNA test results.

3. Because Paschal was sentenced to life sentences for both malice and felony murder in the death of one victim, the conviction for felony murder was simply surplusage, " 'which (should) properly (have been) disposed of by the trial (court's) sentence of only one life sentence for the [two] murder counts.' " *Malcolm v. State*, 263 Ga.

369, 372 (4) (434 SE2d 479) (1993). Thus, the separate life sentence on the alternative felony murder count must be vacated. Id.

*Judgment affirmed in part and vacated in part. All the Justices concur.*

DECIDED MARCH 27, 2006 —
RECONSIDERATION DENIED APRIL 13, 2006.

*Jerry M. Daniel*, for appellant.

*Daniel J. Craig, District Attorney, Madonna M. Little, Assistant District Attorney, Thurbert E. Baker, Attorney General, Edwina M. Watkins, Assistant Attorney General*, for appellee.