S10A1905. NEWSOME v. THE STATE.
(706 SE2d 436)

HUNSTEIN, Chief Justice.

Marcus Leshae Newsome was charged with murder and felony murder in the shooting death of Lawrence Chambliss as well as four

---

counts of armed robbery and six counts of aggravated assault. He was convicted of all counts and now appeals, challenging the sufficiency of the evidence, the admission of an alleged hearsay statement from an unavailable co-indictee, the failure to exclude alleged similar transaction evidence and the effectiveness of his counsel.[1] Finding no error, we affirm. However, because Newsome received two life sentences for the murder of a single victim, his sentence for felony murder must be vacated and the case remanded for the reasons that follow.

1. The jury was authorized to find that appellant was the driver of a silver two-door Honda Accord that pulled into the driveway leading to an apartment on Pebble Street in Macon. The apartment had been rented two weeks earlier by LaShonda Williams; its former residents were drug dealers. At least two men exited the Accord and threatened the three men sitting near the apartment's entrance.[2] When Williams, holding her infant in her arms, stepped outside, shots were fired at the five victims. Williams recognized co-indictee Haynes,[3] whom she had known for several years, as one of her assailants and at trial identified appellant as the driver of the Accord.

Within minutes after the assailants left the Pebble Street apartment, a silver two-door Honda Accord pulled into the driveway of an apartment on Fletcher Street, approximately two miles from Pebble Street. Two men from the Accord, including one with a rifle who was identified as co-indictee Haynes by persons who knew him, entered the apartment, firing shots at the 17 or more men who had gathered in the apartment to watch college basketball and play cards. Lawrence Chambliss was shot in the back of his arm and chest as he fled the room; he bled to death from his wounds. His nephew, Cory Pounds, was shot in the back as he fled. Pounds survived his injury and testified about seeing a third assailant armed with a

---

[1] The crimes occurred on or about March 26, 2008. Newsome was indicted together with Erik Haynes and Jerrod Carter on August 19, 2008 in Bibb County. Newsome was charged with murder, felony murder, four counts of armed robbery, six counts of aggravated assault and possession of a firearm by a convicted felon. He was tried together with Carter and found guilty of all charges on March 6, 2009. In a sentence signed March 9, 2009 and filed ten days later, Newsome was given life imprisonment for the murder, a concurrent life sentence for the felony murder, life without parole for one count of armed robbery to run consecutive to the felony murder sentence, concurrent life sentences for each of the remaining three armed robberies and one consecutive plus five concurrent twenty-year sentences on the aggravated assaults. The possession charge was nolle prossed. Newsome's motion for new trial, filed March 11, 2009 and amended March 17, 2009 and February 17, 2010, was denied May 27, 2010. A notice of appeal was filed June 21, 2010. The appeal was docketed for the September 2010 term in this Court and was submitted for decision on the briefs.

[2] The men were Williams' uncle and the father and uncle of Williams' infant daughter, Markita.

[3] Haynes was tried separately and convicted. We affirmed his conviction in *Haynes v. State*, 287 Ga. 202 (695 SE2d 219) (2010).

handgun coming around the back of the apartment. Victims Faulks, Grayer and Milford, who were in the front bedroom, and McClinton, who was near the front door, were robbed at gunpoint by Haynes and the other assailant.

Witness Bentley testified that, a few days before these crimes, Bentley borrowed a silver two-door Honda Accord[4] and gave appellant and another man a ride to appellant's home, where appellant retrieved a handgun; appellant later drove off with the Accord without Bentley's permission; and Bentley saw that Accord in the vicinity of Fletcher and Pebble Streets on the night the crimes were committed. Bentley also testified that he had previously seen appellant in the company of both co-indictee Haynes and co-defendant Carter.

Appellant testified at trial that he was at home with his girlfriend, Kenyana Carswell, and another woman at the time the attacks occurred; that he was a drug dealer who sold powder cocaine; that he did not own a gun; and that he was not on good terms with either Bentley or Haynes because they both owed him money for drugs.

Appellant asserts that the jury could not have found witnesses Bentley and Williams to be credible because Bentley had a grudge against appellant and Williams did not have sufficient time to observe him so as to accurately identify him. However, it was for the jury to determine the credibility of the witnesses, see *Vega v. State*, 285 Ga. 32 (1) (673 SE2d 223) (2009), and the jury was authorized to disbelieve the alibi defense appellant proffered. See *Edwards v. State*, 282 Ga. 259 (1) (646 SE2d 663) (2007). We conclude that the evidence presented at trial was sufficient to enable a rational trier of fact to find appellant guilty beyond a reasonable doubt of the charged crimes. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Macon Police Detective Vamper testified that, during his investigation into the crimes, he spoke with appellant's co-indictee, Haynes, and then answered affirmatively when the prosecutor asked if Vamper "at some point" obtained an arrest warrant for appellant. Appellant contends that this testimony was hearsay and its admission was reversible error, speculating that the jury may have inferred from Vamper's testimony that Haynes, who was called as a State witness but refused to answer any questions, had provided the information for the warrant. We disagree. Testimony is considered hearsay if the witness is testifying to another party's statement in

---

[4] The owner of the Accord testified that the car was stolen and that she reported the theft to police three days before the crimes at issue.

order to prove or demonstrate the truth of the matter asserted in that statement. See OCGA § 24-3-1; *Fugitt v. State*, 256 Ga. 292 (1) (c) (348 SE2d 451) (1986). As the exchange challenged by appellant clearly shows, Vamper did not testify to what Haynes or any other person related to the detective during the investigation. Compare *White v. State*, 273 Ga. 787 (1) (546 SE2d 514) (2001) (holding that it is error to permit an investigating officer to testify, under the guise of explaining the officer's conduct, to what other persons related to the officer during the investigation). Although appellant asserts that Vamper's testimony constituted an example of "implicit" hearsay, citing *Felder v. State*, 270 Ga. 641, 645 (8) (514 SE2d 416) (1999) (officer's testimony that defendant's mother threw gun into river was "apparent" hearsay as officer was not personally present when mother disposed of the gun), it was not apparent in this case that Haynes was the only source for the information Vamper used when obtaining the arrest warrant. To the contrary, the jury heard evidence that Vamper, before obtaining the warrant, had talked with other witnesses, including Bentley and Williams, and also with other officers investigating the crimes. Accordingly, we find no error.[5]

3. Appellant contends the trial court erred by admitting the testimony of Bentley that appellant, while riding with Bentley in the Accord a few days before the crimes in issue, told Bentley he wanted to go to a "shot house"[6] so that appellant could rob it. The sole argument made in support of this enumeration is appellant's assertion that Bentley's testimony set forth a similar transaction for which the State failed to provide the appropriate notice and follow the procedure in Uniform Superior Court Rule 31.3. See also *Williams v. State*, 261 Ga. 640 (2) (409 SE2d 649) (1991). Although it is uncontroverted that appellant did not actually commit or even attempt a robbery of the shot house, appellant argues that his words to Bentley by themselves were sufficient to qualify as a similar transaction, citing *Boynton v. State*, 197 Ga. App. 149 (397 SE2d 615) (1990) and *Smith v. State*, 142 Ga. App. 1 (234 SE2d 816) (1977). See also Milich, Georgia Rules of Evidence § 11.10 (2nd ed.) ("[t]he independent crime or act . . . might not be conduct at all, as a mere statement can fall under the exception").

We recognize that words uttered by a defendant may be admissible as a similar transaction in those instances where the utterance itself constituted a crime. See *Boynton v. State*, supra, 197 Ga. App. at 150 (1) (conversation was conduct properly treated as a similar

---

[5] Thus, even assuming that appellant's Confrontation Clause arguments were properly raised, they are without merit.

[6] A "shot house" is a location where liquor can be purchased illegally at any hour.

transaction because it involved a form of criminal solicitation or enticement under OCGA §§ 16-4-7, 16-6-5). And utterances may be admissible where the words reflect prior difficulties between the defendant and the victim. See, e.g., *Lowery v. State*, 282 Ga. 68 (2) (646 SE2d 67) (2007) (defendant's threats to victim when relevant to issues at trial are admissible whether made directly to victim or to others); *Dixon v. State*, 275 Ga. 232 (2) (564 SE2d 198) (2002) (prior difficulties, such as threats, admissible when defendant is accused of criminal act against the victim). Here, however, appellant's statement to which Bentley testified was neither a crime in and of itself nor a relevant expression of prior difficulties between appellant and any of the victims of the charged crimes.

Appellant argues that his statement qualified as a similar transaction because of the holding in *Smith v. State*, supra, 142 Ga. App. at 2-3 (2). In *Smith*, the Court of Appeals addressed a challenge to the admission of a statement involving "loose talk" uttered by the defendant while incarcerated on several charges of first degree forgery. In that talk, the defendant proposed "setting up a forgery racket when released from custody" in a manner that was "remarkably similar to the crime for which the defendant was on trial." Id. at 2 (2). The Court of Appeals in dicta[7] held that the "loose talk" was admissible under the analysis applicable to similar transaction evidence but cited no pertinent authority for its holding, relying instead on cases that involved only the admission of prior conduct or criminal offenses deemed sufficiently similar to the charged crimes.[8] Other than a 1983 opinion from the Court of Appeals that followed *Smith v. State* to hold, again in dicta, that evidence of a defendant's conversation was admissible under the analysis applicable to similar transaction evidence, see *Waters v. State*, 168 Ga. App. 918 (2) (310 SE2d 774) (1983) (conversation evidence admissible either for impeachment purposes or under *Smith v. State*, supra), Georgia case law has applied the similar transaction analysis to words unaccompanied by conduct only when those words were themselves capable of constituting a criminal offense. See *Boynton v. State*, supra, 197 Ga. App. at 150 (1).

As reflected in our opinion in *Williams v. State*, supra, 261 Ga. at

---

[7] The Court of Appeals upheld the trial court's determination that the utterances were admissible for impeachment purposes.

[8] Specifically, the cases cited by the Court of Appeals were: *Campbell v. State*, 234 Ga. 130 (214 SE2d 656) (1975) (introduction of defendant's prior conviction for armed robbery); *McNeal v. State*, 228 Ga. 633 (5) (187 SE2d 271) (1972) (introduction of defendant's prior rape of another woman); *Hayes v. State*, 138 Ga. App. 223 (7) (225 SE2d 749) (1976) (introduction of defendant's previous attempt to cash a check similar to the forged instruments at issue); and *Goldberg v. State*, 20 Ga. App. 162, 163 (2) (92 SE 957) (1917) (introduction of "testimony relating to crimes other than the one charged in the accusation").

641 (2), "what is at issue is the admission of evidence of 'independent offenses or acts.' [Cit.]" *Young v. State*, 281 Ga. 750, 752 (642 SE2d 806) (2007). We hold that an accused's statements are not "independent offenses or acts" unless those statements in and of themselves constitute a crime. See *Boynton v. State*, supra, 197 Ga. App. at 150 (1). Rather, statements such as the challenged words repeated by Bentley in this case clearly fall within the definition of character evidence, OCGA § 24-2-2, which is irrelevant and should be excluded unless admissible for some other legal purpose. Id. We accordingly overrule the language to the contrary in *Smith v. State*, supra, 142 Ga. App. at 2 (2) and *Waters v. State*, supra, 168 Ga. App. at 920 (2). It follows that the trial court did not err when it declined to exclude Bentley's testimony about appellant's "shot house robbery" statement based on appellant's objection that the statement was rendered inadmissible by the State's failure to follow the procedural rules appropriate to similar transaction evidence.[9]

4. Appellant claims he received ineffective assistance of counsel regarding (a) counsel's failure to investigate or call to testify at trial an alibi witness, namely, appellant's girlfriend Carswell and (b) counsel's failure to object to the in-court identification of appellant by aggravated assault victim LaShonda Williams. To prevail on his claim, appellant was required to prove both that counsel's performance was deficient and that the deficiency prejudiced his defense. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). Appellant failed to carry this burden as to both alleged instances of ineffectiveness. Regarding the first instance involving Carswell, appellant's claim is meritless because he did not show that he was prejudiced by counsel's performance, in that he did not call Carswell to testify at the hearing on his motion for new trial or provide a legally recognized substitute for her testimony. See *Dickens v. State*, 280 Ga. 320 (2) (627 SE2d 587) (2006). Regarding the instance involving LaShonda Williams, appellant neither asked trial counsel why no objection was made to the in-court identification[10] nor made any showing that the identification would have been suppressed had an objection been made. "[T]here is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Where[, as here,] trial counsel

---

[9] Although not raised by appellant, we note that this character evidence was subsequently rendered admissible for impeachment purposes when appellant took the stand and denied that the conversation and drive with Bentley ever occurred. See generally *Peterson v. State*, 274 Ga. 165 (4) (549 SE2d 387) (2001).

[10] The transcript reveals that police investigators had not sought before trial to have Williams identify appellant so that her spontaneous identification of appellant in court as the driver of the two-door silver Honda Accord could not have been anticipated by appellant's trial counsel.

does not testify at the motion for new trial hearing about the subject, it is extremely difficult to overcome this presumption." (Citation and punctuation omitted.) *Higginbotham v. State*, 287 Ga. 187, 190-191 (5) (a) (695 SE2d 210) (2010). Appellant thus made no affirmative showing that the purported deficiency in counsel's representation was indicative of ineffectiveness, as opposed to being an example of a conscious, deliberate and reasonable trial strategy.

5. Because appellant was sentenced to life sentences for both malice and felony murder in the death of one victim, the conviction for felony murder was simply surplusage that should properly have been disposed of by the trial court's sentence of only one life sentence for the two murder counts. *Malcolm v. State*, 263 Ga. 369 (4), (5) (434 SE2d 479) (1993). Thus, the separate life sentence on the alternative felony murder count must be vacated and the case remanded for proceedings consistent with this opinion. *Paschal v. State*, 280 Ga. 430 (3) (628 SE2d 586) (2006).

*Judgment affirmed in part and vacated and remanded in part. All the Justices concur.*

DECIDED FEBRUARY 28, 2011.

*Bernadette C. Crucilla*, for appellant.

*Howard Z. Simms, District Attorney, Nancy S. Malcor, Dorothy V. Hull, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Amy Hawkins Morelli, Assistant Attorney General*, for appellee.