A11A2198. BROWN v. THE STATE.

(723 SE2d 520)

BLACKWELL, Judge.

Prince Christopher Brown was tried by a Chatham County jury and convicted of armed robbery,[1] aggravated assault,[2] and possession

---

[1] OCGA § 16-8-41 (a).

[2] Brown was convicted of two varieties of aggravated assault, namely assault with intent

of a firearm during the commission of a felony.[3] Brown appeals, contending that the evidence is insufficient to sustain his convictions, that the court below erred when it failed to exclude certain evidence as hearsay, that the court erred when it failed to grant his motion for a mistrial, that there was prosecutorial misconduct at trial, that the court gave an erroneous charge on the burden of proof, and that the court should have merged his convictions for armed robbery and aggravated assault based on his use of a deadly weapon. We find no merit in these contentions, and we affirm the judgment of conviction.

1. We first consider whether the evidence is sufficient to sustain the convictions. To this end, we ask whether any rational jury could have found proof beyond a reasonable doubt of guilt in the evidence adduced at trial, viewing that evidence in the light most favorable to the verdict. *Howard v. State*, 310 Ga. App. 659, 659 (1) (714 SE2d 255) (2011). And as we consider this question, we must keep in mind that it is for the jury, not appellate judges, to assess the credibility of witnesses, weigh and draw reasonable inferences from the evidence, and resolve conflicts in the evidence. See *Ferguson v. State*, 307 Ga. App. 232, 233 (1) (704 SE2d 470) (2010). So, if the record contains some competent evidence to prove beyond a reasonable doubt each element of the crimes of which the defendant was convicted, we must uphold the convictions, even if the evidence is controverted. Id.

Viewed in the light most favorable to the verdict, the evidence in this case shows that, on the afternoon of November 1, 2007, someone knocked on the door of the apartment in which the victim resided.[4] The victim opened the door, and he saw Brown, whom he had seen before in the neighborhood. Brown said that someone wanted to speak with the victim, and when the victim asked who it was, Brown told the victim to wait and that Brown would bring that person to the apartment. Brown left, and then, a few minutes later, he returned to the apartment, entered it, and struck the victim in the face. Another man, Edward Shuman, followed Brown into the apartment.[5] Brown pulled a gun and hit the victim about the head with the gun, striking

---

to rob, OCGA § 16-5-21 (a) (1), and assault with a deadly weapon, OCGA § 16-5-21 (a) (2). The court below found that the convictions for aggravated assault under OCGA § 16-5-21 (a) (1) and armed robbery merged, but it found that the convictions for aggravated assault under OCGA § 16-5-21 (a) (2) and armed robbery did not.

[3] OCGA § 16-11-106 (b).

[4] According to the victim, this incident occurred around 1:00 in the afternoon. Brown offered the testimony of an alibi witness, who said that Brown was visiting with her at that time.

[5] Brown and Shuman were tried together, and Shuman also was convicted of crimes arising from this incident. We previously affirmed Shuman's convictions in an unpublished decision. *Shuman v. State*, 306 Ga. App. XXVI (Case No. A10A1616) (October 1, 2010).

the victim as many as forty times. According to the victim, the assault continued for ten or twenty minutes. At some point, Brown told the victim to "give it up," and Brown took about $250 from the pocket of the victim. At another point, Shuman told Brown to kill the victim, and Brown continued to strike the victim about the head with the gun. The victim then struggled with both men for several more minutes. The victim eventually made his way to the front window of his apartment and broke it, and Brown and Shuman then left the apartment through the back door.

Brown argues that the evidence is insufficient because the testimony of the victim "was so internally inconsistent and contradicted by other evidence that a rational trier of fact could not have convicted [Brown] based upon it." But as appellate judges, we do not undertake to pass upon the credibility of witnesses. As we have explained before, we do not have "the opportunity to hear the witnesses and observe their demeanor," and for this reason, we leave questions of credibility to the jury, and we do not substitute our own assessments of credibility for those of the factfinder. *Walton v. State*, 217 Ga. App. 773, 774 (1) (459 SE2d 184) (1995) (citation and punctuation omitted). The victim in this case testified about the assault and identified Brown as the man who committed it, and the competent testimony of even a single witness can be enough to sustain a conviction. See *Smith v. State*, 237 Ga. App. 852, 853 (1) (521 SE2d 7) (1999).[6] We view the evidence in the light most favorable to the verdict, and so viewed, a rational jury in this case could have accepted the testimony of the victim and, based upon that testimony, found proof beyond a reasonable doubt of Brown's guilt. The evidence adduced at trial is, therefore, sufficient to sustain the convictions.

2. We turn next to the contention that the trial court erred when it admitted evidence that, Brown says, is hearsay. At the time of the assault and robbery, the victim recognized Brown but apparently did not know his name. The victim subsequently learned from others that Brown was known as "Chris," and the victim advised investigating officers to look for someone named "Chris." At trial, the court permitted the victim to testify that he learned the name "Chris" from others, but it would not allow the victim to testify that others had told him that "Chris" was, in fact, the person who assaulted and robbed him, and so, the victim testified as follows:

Q: Were you given the name of Chris Brown?

---

[6] We note that the State also presented the testimony of a detective and two civilian witnesses, who corroborated portions of the victim's testimony. That corroboration, however, is not essential to our determination that the evidence is sufficient to sustain the convictions.

A: Yes, sir.

Q: Okay. And who gave you the name of Chris Brown?

A: It's his step-daddy, supposed to have been the baby's momma or something.

Q: Do you know this person's name?

A: No, sir. . . .

Q: All right. Does the name Ramone Coleman mean anything to you?

A: He came and told me the name, too, sir. . . .

Q: Did you call the police and say I know a name for the people or one of the men that robbed me?

A: Yes, sir.

Q: And the name that you gave was Chris?

A: Yes, sir.

On appeal, Brown contends that this testimony is hearsay and should not have been admitted.

Even assuming that the testimony is hearsay,[7] we conclude that its admission was harmless and, therefore, does not amount to reversible error. As our Supreme Court has explained, "[t]he erroneous admission of hearsay is harmless where . . . legally admissible evidence of the same fact is introduced. In such a case, the hearsay is cumulative and without material effect on the verdict." *Felder v. State*, 270 Ga. 641, 646 (8) (514 SE2d 416) (1999) (citations omitted). If the testimony about which Brown complains is hearsay at all, it is hearsay that concerns only the question of identity, and there was plenty of other evidence on that question. At trial, the victim identified Brown as the person who beat him with a handgun, and another witness, a neighbor of the victim, identified Brown as someone who had visited the apartment of the victim on the day of the assault. The victim and his neighbor each also identified Brown in photographic lineups soon after the assault. In addition, the victim identified Shuman, both at trial and in a photographic lineup, as the person who followed Brown into his apartment, and Brown and Shuman apparently are brothers. In light of this other evidence of identity, the testimony about which Brown complains was merely cumulative, and we conclude that its admission had no effect upon

---

[7] A statement made out of court is hearsay only if it is offered for the truth of the matter asserted. *Newsome v. State*, 288 Ga. 647, 649-650 (2) (706 SE2d 436) (2011). Here, the victim testified that others had mentioned "Chris," but the jury heard nothing about the circumstances in which they mentioned that name. Although the mention of a name perhaps implies the assertion of something more than just the name itself, what exactly is implied cannot be surmised without knowing the context in which it is given.

the verdict and was, therefore, harmless. See, e.g., *Johnson v. State*, 289 Ga. 22, 27 (4) (709 SE2d 217) (2011) (admission of hearsay identification evidence with respect to similar transaction was harmless where victim in similar transaction also identified defendant as his assailant); *White v. State*, 273 Ga. 787, 791 (4) (546 SE2d 514) (2001) (erroneous admission of hearsay identification evidence was harmless where one victim identified defendant and co-defendant, another victim identified co-defendant, and defendant and co-defendant were brothers); *Cooper v. State*, 258 Ga. App. 825, 830-831 (4) (575 SE2d 691) (2002) (erroneous admission of hearsay identification evidence was harmless where other evidence established identity).

3. We turn now to the question of a mistrial. During a break for lunch on the first day of trial, Brown's lawyer saw a witness for the State, a detective, speaking with some jurors near the courthouse elevator. After lunch, Brown moved for a mistrial, and the court inquired into the conversation among the detective and the jurors. The detective testified that, as he was leaving the courthouse for lunch, he encountered the jurors and some other individuals near the elevator. There was some casual conversation about what a long day it had been, and the detective said that he "pretty much [spent his] life sitting in court," to which the jurors responded with a laugh. One juror asked for directions out of the courthouse, and the detective explained that the front door would be locked and that the jurors would have to exit through the rear door. The detective could not remember what else, if anything, was said, although he was sure that he did not discuss the case with the jurors and spoke with them only for about 30 seconds.

Four jurors also testified about their encounter with the detective. One recalled that they had a short conversation with the detective about how to exit the courthouse, but nothing was said about the case or about Brown. Another testified that the detective remarked that delays are "not unusual" in court and that the jurors "shouldn't be worried" about any such delays. Both of these jurors said that they could consider the case objectively, notwithstanding their brief conversation with the detective. Of the other two jurors, one did not recall any conversation at all with the detective, and the other remembered only that the detective said "hello." After hearing from the detective and the jurors, the court below denied the motion for mistrial.[8]

---

[8] The court also heard testimony from the legal assistant to Brown's lawyer, who had been with the lawyer during the lunch break and also had seen the detective speaking with the jurors. The legal assistant said that the conversation lasted only for 20 or 30 seconds, and she explained that she did not hear what was said.

Whether a mistrial is warranted is a question committed to the sound discretion of the trial court, see *Brown v. State*, 285 Ga. 324, 325 (1) (676 SE2d 221) (2009), and when an appeal is taken from the denial of a motion for mistrial, we consider only whether the court below abused its discretion. See *Collins v. State*, 310 Ga. App. 613, 618 (4) (714 SE2d 249) (2011). It is true, of course, that a witness ought not speak with jurors while a trial is ongoing, *Jones v. State*, 289 Ga. 111, 116 (2) (d) (709 SE2d 773) (2011), and it is equally true that a presumption of prejudice arises upon a showing of irregular communications with a juror. See *Duncan v. State*, 281 Ga. App. 270, 271 (2) (635 SE2d 875) (2006). This presumption, however, is a rebuttable one, and it is one that sometimes can be rebutted simply by a showing that the substance of the communications had nothing to do with the case and otherwise was unlikely to influence the jurors in their deliberations and verdict. See, e.g., *Collins v. State*, 290 Ga. 505, 507 (3) (722 SE2d 719) (2012) (dismissal of juror not warranted where improper communication was clearly inconsequential and caused no prejudice to the defendant); *Jones*, 289 Ga. at 117 (2) (d) (defendant was not harmed by improper communication between witness and juror, where communication did not concern case and was not intended to influence juror); *Duncan*, 281 Ga. App. at 271 (2) (evidence that officer-witness and juror, who were friends, spoke during trial about recent wedding of juror's daughter was sufficient to rebut presumption of prejudice); cf. *Lamons v. State*, 255 Ga. 511, 512-513 (340 SE2d 183) (1986) (acknowledging that "some irregularities are inconsequential," but finding new trial necessary where officer had "not a casual conversation but a discussion of drug sales, the same issues involved in the trial," with juror and would not reveal specifics about conversation). Here, the evidence is undisputed that the detective and the jurors had only a casual conversation and did not speak about the case,[9] and we find no abuse of discretion in the determination of the court below that no mistrial was warranted.[10]

---

[9] Not everyone recalled the conversation in exactly the same way, but the differences in their recollections are not enough to make us think that anything sinister was afoot. That five people remember a casual conversation about nothing of great significance differently is hardly surprising. And in any event, the court below was in a far better position than us to assess the credibility of the detective and the jurors who testified about the irregular communication and to consider whether the jurors still would be able to render an impartial verdict.

[10] Brown contends that the comments about it having been a long day were likely to prejudice the jurors against him, inasmuch as his lawyer apparently had asked a lot of questions in her voir dire of prospective jurors on the preceding day. We do not agree, and in any event, even if the discussion of it having been a long day otherwise might have been prejudicial, any such prejudice was ameliorated, we think, by the fact that the trial judge apologized to the jurors for the delays and specifically informed the jurors that everyone had

4. We next consider the claim of prosecutorial misconduct. Brown complains about two comments that the prosecuting attorney made in his closing arguments, one characterizing the manner in which defense counsel had examined a particular witness, and the other concerning the burden of proof and the nature of reasonable doubt. Brown failed, however, to make a contemporaneous objection to either comment, and for this reason, he has waived his opportunity to complain about the closing argument of the prosecuting attorney. *McClarin v. State*, 289 Ga. 180, 183 (3) (b) (710 SE2d 120) (2011). As our Supreme Court has explained before, "the contemporaneous objection rule cannot be avoided by characterizing trial occurrences as examples of prosecutorial misconduct." *Watson v. State*, 278 Ga. 763, 775 (17) (604 SE2d 804) (2004) (citation and punctuation omitted).

5. We turn now to the jury charge on the burden of proof. In its charge to the jury, the trial court correctly instructed the jury at length about the presumption of innocence, the burden of the State to prove the guilt of the defendants beyond a reasonable doubt, and the nature of reasonable doubt. The court then sent the jury to lunch, and it brought the jury back after lunch to explain the verdict form. In the course of explaining the verdict form, the trial judge inadvertently made reference to "the preponderance of the evidence," telling the jury that "[y]ou will put either guilty or not guilty [upon the verdict form], whatever you find it to be by the preponderance of the evidence." The prosecuting attorney, however, caught the mistake and promptly informed the judge. And before the jury was sent out of the courtroom with the verdict form, the judge acknowledged the mistake to the jury and clarified the burden of proof:

> [I was] [t]rying to do too many things at once. The lawyers pointed out to me that I misspoke when we were talking about the burden of proof. And the burden of proof — actually, while you've been at lunch, we've been handling another case that's a civil matter. And the civil matter has a different burden of proof. Yours, the burden of proof here, is beyond a reasonable doubt. And so again, as you go through the verdict form on each count, you would decide guilty or not guilty, whatever you find the verdict to be. And again, the standard of proof here is beyond a reasonable doubt.

We see no error.

---

been working hard to move the case forward and that the delay was not the fault of any of the lawyers or parties.

Although the trial judge misstated the burden of proof, she promptly explained to the jury that she had misstated it, and she then explicitly instructed, consistent with the earlier charge of the court, that the burden of proof was, in fact, proof beyond a reasonable doubt. Brown complains that the trial judge did not do something more to accomplish an "express withdrawal" of the misstatement, but Brown failed to complain at the time that the corrective instruction was not sufficient, and in any event, the corrective instruction was, we think, clear enough. "[T]his is not a case where an incorrect charge is given and subsequently a correct charge [is] given, where the jury is expected to select one to the exclusion of the other." *McIlwain v. State*, 264 Ga. 382, 383 (2) (445 SE2d 261) (1994) (citation and punctuation omitted). Consequently, we find no error in the jury charge on the burden of proof.

6. Finally, we consider Brown's contention that his convictions for aggravated assault under OCGA § 16-5-21 (a) (2) and armed robbery merge.[11] The court below found that these convictions do not merge, and it sentenced Brown for each. We review the question of merger de novo, *Louisyr v. State*, 307 Ga. App. 724, 730 (2) (706 SE2d 114) (2011), bearing in mind, as our Supreme Court has explained, that aggravated assault and armed robbery do not merge as a matter of law, and they seldom merge as a matter of fact. *Henderson v. State*, 285 Ga. 240, 244 (4) (675 SE2d 28) (2009). This is not, we think, one of those rare cases in which the two crimes merge as a matter of fact.

Although the testimony of the victim is not perfectly clear about the sequence of events inside his apartment, as we understand this testimony, it shows that the armed robbery and aggravated assault were separate and distinct acts. The victim testified:

> [Brown] told me give it up, you know what time it is. I said man, I don't have nothing. I said the only thing I got in my pocket is the money that I got in my pocket. So when I — he went in my pocket and got the money out of my pocket. The other one [Shuman] went in the kitchen and got a knife and went in the back and went to searching my room.

The victim further testified that, when Shuman later returned, Shuman told Brown several times to kill the victim, all while Brown continued to strike the victim repeatedly about the head with the gun. Worried by the talk of his killing, the victim then grabbed the

---

[11] Brown also argues that the conviction for possession of a firearm in the commission of an aggravated assault should merge into the armed robbery, but this argument is derivative of his principal argument, that aggravated assault and armed robbery merge. Because his principal argument is without merit, so is his derivative one.

gun, and he struggled with both Brown and Shuman for several minutes before he finally managed to get to the window and break it. This testimony shows that the armed robbery and aggravated assault were separate events, the armed robbery being complete before the commission of the aggravated assault. For this reason, the court below did not err when it refused to merge these convictions.[12] See *Anderson v. State*, 306 Ga. App. 423, 424 (2) (702 SE2d 458) (2010) (offenses based on separate and distinct acts do not merge); *McKenzie v. State*, 302 Ga. App. 538, 539 (1) (a) (691 SE2d 352) (2010) ("[I]f the underlying facts show that one crime was completed prior to the second crime, there is no merger.") (citation and punctuation omitted).

*Judgment affirmed. Barnes, P. J., and Adams, J., concur.*

DECIDED FEBRUARY 17, 2012.

*Jill E. Roth,* for appellant.
*Larry Chisolm, District Attorney, Sarah L. Moorhead, Assistant District Attorney,* for appellee.

---

[12] Even if the armed robbery and aggravated assault could be characterized as involving only a single transaction, merger still would not be warranted in these circumstances. See *Nava v. State*, 301 Ga. App. 497, 502-503 (2) (687 SE2d 901) (2009) (under required evidence test, aggravated assault and armed robbery did not merge, even when each was based on the same occurrence, where one defendant pointed gun at victim while another defendant took money from a cash register and urged the first defendant to shoot the victim, causing the victim to be afraid).